No. 35,995

Ollie Mahan, *Appellee*, v. Kansas City Public Service Company, *Appellant*.

(146 P. 2d 383)

Opinion filed March 4, 1944.

*Edwin S. McAnany*, of Kansas City, argued the cause, and *Thos. M. Van*

*Cleave,* of Kansas City, and *Charles L. Carr,* of Kansas City, Mo., were on the briefs for the appellant.

*J. Willard Haynes,* of Kansas City, argued the cause for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action against a public transportation company to recover damages for personal injuries suffered by a passenger. The plaintiff prevailed and the defendant appeals.

The principal questions presented are whether certain special findings of the jury—including a finding on the question of negligence—were supported by substantial evidence; whether a mistrial should have been declared because of misconduct of the plaintiff during the trial; and whether the verdict was excessive in amount.

Shortly stated, the plaintiff, Ollie Mahan, alleged that on June 23, 1942, she was a passenger on a public bus operated in Kansas City, Kan., by the defendant, the Kansas City Public Service Company; that she was seated, facing forward, immediately back of the rear exit; that the bus was proceeding north on Seventh street; that as the bus approached and entered the intersection of Seventh street and Washington boulevard the operator of the bus *"so negligently operated and controlled* the bus as to cause the right front corner thereof to come into violent collision with the right rear corner of a Plymouth coupé driven by M. K. Shear, which was eastbound on Washington boulevard; . . . *as a result of which said bus was caused to be suddenly and violently slowed and stopped and the plaintiff was thrown suddenly and violently from her seat* . . . and on the floor thereof and into and upon the steps of the rear exit," (Italics supplied) and suffered thereby painful and lasting injuries. The allegations as to the extent and nature of the alleged injuries need not now be noted. She sought damages in the amount of $3,000. The answer was a general denial.

Trial was had before a jury in February, 1943. A demurrer by defendant at close of plaintiff's evidence was overruled. Following evidence by the plaintiff members of a medical commission appointed by the court to examine the plaintiff testified as to her injuries. During the testimony of one of the doctors occurred the incident which appellant contends constituted misconduct on the part of the plaintiff and to which reference will be made later. Defendant's evidence followed.

The jury returned a verdict for the plaintiff for $2,500, and answered special questions as follows:

"1. When the front wheels of the coupé crossed the north-and-south center line of 7th Street Trafficway in turning east, at what speed in miles per hour was it traveling? A. 8 to 12 miles per hour.

"2. At what speed in miles per hour did the coupé move from the time its front wheels crossed the center line of the 7th Street Trafficway until the instant of collision? A. 8 to 12 miles per hour.

"3. At the instant of the collision, where was the rear right corner of the coupé in distance from,

(1) (a) The north and south center line of 7th Street? (b) From the east and west center line of Washington Boulevard?

(2) At said time where was the right front corner of the bus in distance from; (a) The north curb line of Washington Boulevard as extended across 7th Street? (b) What distance from the east curb line of 7th Street as extended across Washington Boulevard?

(1) (a) About 11 feet. (b) From center line to five feet.

(2) (a) From 20 to 25 feet. (b) About 15 feet.

"4. State specifically where, with reference to the center of the intersection of Washington Boulevard and the 7th Street Trafficway did the coupé turn left to go east on Washington Boulevard? A. Right front wheel passed over exact center of intersection.

"5. At what rate of speed in miles per hour was the bus traveling,

(a) When it reached the east and west alley between Nebraska Avenue and Washington Boulevard? (b) When the coupé started south across Washington Boulevard after the traffic light had turned green? A. (a) 20 miles per hour. (b) 20 miles per hour.

"6. Where was the bus when the coupé stopped for the traffic light on the north sidewalk line of Washington Boulevard as projected across 7th Street Trafficway? A. Between Nebraska Ave. and the alley.

"7. Where was the bus when the coupé turned east at or near the intersection of Washington Boulevard and 7th Street? A. Between alley and Washington.

"8. If you find for the plaintiff, state specifically each act of negligence of defendant that caused or contributed to her injury. A. The bus did not have right of way because the coupé entered intersection first.

"9. If you find for the plaintiff, state how much you allow for:

(a) Past pain and suffering;

(b) Future pain and suffering;

(c) Past loss of wages;

(d) Future loss of wages;

(e) Plaintiff's inability to discharge her household and domestic duties, past and future? A. (a) $1,500.

(b) None.

(c) $500.

(d) None.

(e) $500."

The defendant moved to set aside the answers to all questions except No. 4, and also moved for judgment upon the special findings

notwithstanding the general verdict. Both motions were overruled, as was also a motion for a new trial. This appeal followed.

Appellant abandons the contention that the court erred in overruling the motion for judgment on the special findings, and now only urges that a new trial should have been granted.

A brief statement of the circumstances surrounding the accident will help to clarify the issues. Seventh street, on which the bus was proceeding northward, is a thoroughfare fifty-two feet wide from curb to curb. Washington boulevard, running east and west, is forty feet wide. There were traffic-control lights on the four corners of the intersection. A coupe, in which Mr. and Mrs. R. K. Shear were riding—Mr. Shear being the driver—approached the intersection from the north. There is no dispute that both the bus moving north and the auto moving south entered the intersection on the green light. The auto made a turn to the left with the intent of proceeding eastward on Washington. In an effort to avoid a collision the bus driver swung the bus to the left, but the right front corner of the bus collided with the right rear corner of the coupé. Neither vehicle was so damaged that it could not proceed following the accident, and as far as this record shows neither Mr. nor Mrs. Shear was seriously injured. The plaintiff was thrown into what is described as the "stair well" leading to the bus exit, either by the sudden slowing of the bus or by the impact, or both.

The negligence, if any, of the driver of the coupé is not here involved. We are concerned only with the alleged negligence of the bus driver. In considering that question, we start with the well-settled rule that while a public carrier is not an insurer of the safety of its passengers it is held to a high degree of care. (13 C. J. S. 1255 *et seq.*) The trial court so instructed and appellant agrees that that is the rule. Appellant contends that the evidence disclosed that the bus driver exercised the highest degree of care possible and practicable under the circumstances. We cannot, of course, weigh conflicting evidence upon that question. We examine the jury's answers to see whether they are supported by evidence and are consistent with the general verdict.

The jury's specification of negligence is found in the answer to question 8, as follows:

"If you find for the plaintiff, state specifically each act of negligence of defendent that caused or contributed to her injury. A. The bus did not have right of way because the coupé entered intersection first."

We note, at the outset, that while appellant argues that the answer to question eight does not constitute an act of negligence, it does not argue that it is not within the allegations of the petition, nor did it ask that it be set aside on that ground. Reasonably construed we think it clearly falls within the allegations of the petition.

Did the answer state an act of negligent operation? In considering that question we must follow the sound and well-established rule that a jury's answers to special questions are to be liberally construed with a view to ascertaining the intention of the jury and to upholding rather than upsetting the general verdict, where such construction can reasonably be made. (64 C. J. 1185-1187; *Taggart v. Yellow Cab Co.,* 156 Kan. 88, 93, 31 P. 2d 924.) While the answer is somewhat incomplete its intendment seems plain enough. The jury evidently meant to say that the bus driver entered the intersection in an attempt to proceed through it when the coupé was making a left turn under circumstances which gave it a prior right to the east traffic lane. So construed, was there substantial evidence to support the finding?

First, let us note just what appellant contends. It argues that the traffic light being green both the bus and the coupé had a right to enter the intersection, but that the bus had a prior right to proceed straight through the intersection as against the right of the coupé to make a left turn across such through traffic. In support of that view appellant stresses section 8-551, 1941 Supp., which is as follows:

"The driver of a vehicle within an intersection intending to turn to the left *shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard,* but said driver, having so yielded and having given a signal when and as required by this act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the vehicle making the left turn." (Italics supplied.)

The law is clear enough. But again, the facts control. Was the bus, in fact, "within the intersection or so close thereto as to constitute an immediate hazard" when the coupé was within the intersection intending to turn to the left? On that question the jury found that the bus was "between the alley and Washington." Under that answer it could have been at any point between the alley and the intersection. Appellant did not ask that the answer be made more definite. Nor do we find convincing appellant's argument

that we must now conclude—following an uncertain mathematical computation based on speeds and distances—that the bus was right at the intersection when the coupé made the turn. If the bus was a considerable distance from the intersection—as it could have been according to some of the evidence and under the jury's answer— then obviously we could not say that it was so close that the coupé made a left turn in violation of section 8-551. Furthermore, in this connection there was further testimony which cannot be ignored. One of the bus passengers, a witness for the defendant, testified on direct examination as follows:

"A. Well, as I was riding there, when we come to the corner we, as I said before, we were going between the speed of fifteen and twenty miles an hour entering the intersection.

"Q. As you entered the intersection? A. Yes, *to me it seems as if the bus picked up speed,* how much speed he picked up I would not say, because—" (Italics supplied.)

There was much evidence that as the coupé approached the intersection the light was red and it stopped to await the green light. Mr. Shear testified that when the light turned green and as he started to make a left turn he put his arm out "and down" to indicate the turn and in this he was corroborated by Mrs. Shear and by at least one other witness. The bus driver testified that the coupé cut directly in front of him without any warning and one of the bus passengers gave like testimony. Appellant stresses the fact that the arm signal which Shear says he gave was too much downward to indicate a left turn and in fact was a signal that he was going to stop or decrease speed. We cannot attach much weight to this point. The jury could tell, but we cannot tell from the record at what downward angle the witness indicated he put his arm. And the bus driver says there was no signal or warning of any sort. All this was for the jury. In addition to that, no instruction was asked on the point and no error is assigned for failure to instruct with reference to a misleading signal.

While there was marked conflict in the evidence we must conclude that there was ample evidence to support the jury's finding of negligence.

We come to plaintiff's contention that the jury should have been discharged during the trial on account of misconduct on the part of the plaintiff. During the testimony of one of the doctors, the plaintiff became more or less hysterical, sobbed, and interrupted the examination of the witness. The following occurred:

"Mrs. Ollie Mahan: I won't get well.

The Court: Just a minute—

Mr. McAnany: Well—

The Court: Control yourself, Madam.

Mrs. Ollie Mahan: I won't get well.

Mr. McAnany: If the Court please—

The Court: Members of the jury: Of course, anything like that, you will not consider as a part of the evidence in this case. Now, have her control herself.

Mrs. Ollie Mahan: I won't get well.

The Court: Now, just a minute—

Mrs. Ollie Mahan: I won't get well."

Still sobbing, plaintiff was taken to the judge's chambers until she recovered her composure.

Appellant calls our attention to the case of *Stutz v. Milligan, et al.,* (Mo. App.) 223 S. W. 128, in which the appellate court affirmed the action of the trial court in granting a new trial on account of the conduct of a wife in "becoming hysterical and crying aloud" when her husband was called as a witness in an action for alienation of affections. Appellee cites cases from Missouri, North Carolina, and Washington which involved alleged prejudicial conduct consisting of weeping and other emotional outbursts in the presence of the jury and where motions to declare a mistrial were denied. There would be little point in reviewing these and many other cases on the subject which might readily be collected. So much depends upon the divergent circumstances and issues involved in particular cases and upon the varying judgments of trial courts as to effect upon juries.

The responsibility of determining whether irregular conduct of this sort is prejudicial rests primarily in the sound discretion of the trial court, and its action will not be set aside unless prejudice clearly appears. (64 C. J. 103; 5 C. J. S. 499, 500; *Couch v. Kansas Elec. Power Co.,* 138 Kan. 822, 824, 28 P. 2d 724; *Harmon v. Theater Co.,* 111 Kan. 252, 253, 206 Pac. 875; *Pasho v. Blitz,* 99 Kan. 421, 422, 162 Pac. 1161.)

Furthermore, in the instant case the nervous character of the plaintiff and her lack of emotional balance or control were characteristics which at least two of the doctors emphasized in describing her condition as related to her injuries. No useful purpose would be served by reviewing this testimony. It is pertinent to note, however, that counsel for appellant, in his argument to the jury, treated plaintiff's outburst as something she could not control. He said:

o

"Now she is a woman that is hysterical; subject to hysteria, and in her condition she couldn't be anything else. When she went on the stand; when she sat there and cried out loud the other day, I first thought that it might be due to something else. I don't think so, I think it is due to her hysteria. It is due to a condition that she cannot control."

We are unable to say that the incident prejudiced the jury and that the trial court abused its discretion in refusing to declare a mistrial.

Lastly, appellant contends the verdict was excessive in amount, showing bias and prejudice. No complaint is made concerning the allowance of $500 for "inability to discharge her household and domestic duties, past and future." Nor does appellant make any argument as to the allowance of $500 for "past loss of wages." The allowance is supported by substantial evidence. The only objection urged relates to the allowance of $1,500 for "past pain and suffering." We have carefully examined the record upon that point. It is rather extensive and we think it unnecessary to review it in detail. In addition to the testimony of the plaintiff upon the question we have that of three doctors, witnesses for the plaintiff, and of four doctors comprising the medical commission. While there is some divergence in the testimony there is ample evidence to support the allowance.

We find no error and the judgment is affirmed.