KOPYCINSKI v. FARRAR et al.

No. 586.

District Court, D. North Dakota, S. E. D.

Jan. 7, 1946.

P. W. Lanier and Emanuel Stern, both of Fargo, N. D., for plaintiff.

Arthur W. Stokes, of Grand Forks, N. D., for defendants. Felix Farrar and Morris Shapiro.

Quentin Burdick, of Fargo, N. D., for defendant Maurice Persellin.

Lewis Oehlert (of Nilles, Oehlert & Nilles), of Fargo, N. D., for defendant Joe Kallner.

VOGEL, District Judge.

This is a motion for a new trial made in behalf of the plaintiff. The action is one for damages for personal injuries arising out of an automobile accident. The plaintiff was a guest riding in an automobile driven by the defendant Persellin, owned by the defendant Farrar, and alleged to be under the general supervision and in charge of the defendant Shapiro. The fourth defendant was the owner and operator of a vehicle with which the car in which the plaintiff was riding collided. The accident occurred at night time on a highway northeast of Detroit Lakes in the State of Minnesota. Shortly prior to the accident, the plaintiff and her companions had stopped at a night club approximately a mile and a half from the point of the accident.

Prior to being at the night club, they had stopped for short periods at one or more taverns in driving around the vicinity of Detroit Lakes. During the evening, prior to the accident, the plaintiff, the driver of the car in which she was riding and at least one, if not both, of the other occupants of the vehicle had consumed beer and some whiskey, although there is no direct evidence in the record to the effect that either the plaintiff or the driver of the car was actually intoxicated. As they approached the point of the accident, they were driving on a hard-surfaced tarvia road at a rate of speed estimated by the occupants of the car at from 25 to 35 miles per hour. The lights on the car were good, conformed with the statutory requirements of the State of Minnesota, and illuminated the road ahead of the vehicle for the required distance. While so driving, they ran into the rear of the defendant Kallner's car which was parked on the right-hand side of the highway, either on the hard-surfaced portion thereof, if the occupants of the plaintiff's car are to be believed, or mostly off on the right-hand shoulder, if the occupants of the defendant Kallner's car are to be believed. There was a dispute in the evidence as to whether or not the Kallner car had its lights turned on at the time.

The jury returned a verdict in favor of all defendants.

Plaintiff's motion for a new trial and plaintiff's amended motion for new trial include some thirteen separate grounds, many of which are interrelated. They fall naturally into the following classifications:

1. Because of the alleged misconduct of certain members of the jury.

2. Because the Court erred in refusing to ask the jurors, at the request of the plaintiff, on their voir dire examination whether or not they were directly or indirectly interested in automobile liability insurance.

3. Because the verdict is based upon a misunderstanding or lack of understanding on some point of law, the jurors having at one time during their deliberations signified a desire for further instructions from the Court.

4. Because the Court erred in denying plaintiff's motion to strike the defendants' pleas of contributory negligence on the part of the plaintiff.

5. Because the Court erred in instructing the jury as to the theory of the de-

fendant Farrar to the effect that his car, operated by Persellin, was not operated for and in his behalf at the time of the accident, and that Persellin did not have his consent or permission to drive the car, it being claimed by plaintiff that there was no evidence of such theory offered in behalf of the defendant Farrar.

The plaintiff's grounds for a new trial will be treated separately as classified above.

█ 1. *Because of the alleged misconduct of certain members of the jury.*

Plaintiff has offered her affidavit to the effect that during the morning recess on December 18, 1945, while the case was in the process of trial, she was in the presence of the two women jurors in the women's lavatory and that the women jurors, in her presence, were discussing the question of drinking whiskey; that they were discussing such topic with each other and also with the wife of one of the other jurors; that they stated that they were against drinking, glad that their daughters didn't drink, and that they couldn't see how drinking and going to night clubs could be called recreation.

These facts, if facts they were, were not called to the Court's attention at the time, but plaintiff did advise her counsel thereof. The trial of the case continued through the 18th day of December. The case was argued to the jury on December 19th and submitted by the Court to the jury in the afternoon of December 19th. The jury returned its verdict on the morning of December 20th. It is patent from this that the motion for a new trial cannot be sustained on this ground because the plaintiff and her counsel did not call the Court's attention to the alleged misconduct immediately upon becoming apprised of the fact. They will not now be heard to speak when they were silent at a time when they should have spoken. In other words, they may not speculate upon a favorable verdict by a jury and subsequently, when that verdict is unfavorable, claim advantage for the alleged misconduct. For that reason alone, the ground is not a substantial one. It seems to the Court, however, that in view of the seriousness of the charge of "misconduct by the jury", justice to the jurors involved requires further comment.

█ Both of the women jurors involved and the wife of the foreman of the jury, who is alleged to have taken part in the conversation referred to in plaintiff's affidavit, have denied discussing the drinking of whiskey or going to night clubs, claim that the conversation was general, that it had nothing to do with the case whatsoever, and that it referred only to the subject of smoking, and that there was no misconduct in any respect. In view of the overwhelming weight of the evidence, the Court specifically finds that the jurors did not discuss the case at the time referred to, that there was no such conversation as alleged by the plaintiff, and that there was no misconduct on the part of the women jurors. Even if the affidavit of the plaintiff should have been found to be correct and that the women jurors had indicated a disapproval of drinking and attending night clubs, that would hardly have amounted to misconduct. Such a conversation during the trial and in front of the plaintiff might have been an indiscretion or indicated a lack of good judgment, but it certainly would not have amounted to misconduct and it was not "discussing the case". It would merely have meant that the two jurors indicated disapproval of drinking in general and pleasure at the fact that their daughters did not find recreation in attending night clubs.

Plaintiff is not entitled, as a matter of right, to have her case tried to a jury, all of whom like to drink and all of whom do find recreation in attending night clubs. She is entitled only to a fair and impartial jury.

At the request of the plaintiff, in the voir dire examination, the Court submitted to all members of the jury the following questions:

A. If the evidence in this case should show that the plaintiff was injured while a guest in the automobile of a defendant while returning at night time from a night club in the recreational center known as Detroit Lakes, Minnesota, would this fact in any way prejudice you against the plaintiff?

B. Could you and would you, in spite of this fact, give her a fair trial under the evidence as introduced on the trial and the law as given to you by the Court?

C. If, as such a guest on such a trip, plaintiff is shown under the evidence to have taken one or two drinks of beer or highballs, would you be prejudiced in any way against her in the trial of her case?

D. Could you and would you, in spite of such evidence, give her a fair trial under the facts introduced and the law as given to you by the Court?

E. If the evidence in this case shows that the plaintiff is a married woman and on the night of the accident was in a party in the absence of her husband, who was in the service at the time, would this fact prejudice you in finding a verdict in favor of the plaintiff?

To questions A, C, and E the jurors replied in the negative, and in the affirmative as to B and D, and nothing has been brought to the attention of the Court which would justify the conclusion that their answers were not honestly given and conscientiously carried out.

*2. Because the Court erred in refusing to ask the jurors, at the request of the plaintiff, on their voir dire examination whether or not they were directly or indirectly interested in automobile liability insurance.*

After the Court's voir dire examination of the jury panel, counsel were all asked if they had additional questions to submit, and they were given an opportunity of submitting such questions to the Court in chambers out of the presence of the jury. At such time, counsel for the plaintiff inquired of counsel for the several defendants if the defendants carried liability insurance and if insurance companies were actually furnishing a defense to the action. From the answers of defense counsel, it was apparent that two of the defendants had contracts with insurance companies idemnifying them against loss by reason of this type of accident and that such insurance companies were furnishing a defense for some of the defendants, but doing so under contracts reserving rights on the part of the insurance companies to deny liability for various reasons with which we are not here concerned. Thereafter, plaintiff's counsel asked the Court to inquire of the jurors as follows:

A. Is there any member of this jury who is now or has been directly or indirectly connected with or interested in any automobile liability insurance company?

B. Is there any member of any juror's family who is now or has been directly or indirectly connected with or interested in any automobile liability insurance company?

The Court refused to ask the questions and such refusal is assigned as error. The Court directs attention to the case of Andrews v. Hotel Sherman, Inc., 7 Cir., 138 F.2d 524, 527. "The scope of an examination of the venire on its voir dire is largely within the discretion of the trial court. Both parties are entitled to a fair and impartial jury. If the plaintiff believes in good faith, and has reason to believe, that an insurance company is the real party defendant, although not a party of record, *and there are facts existing and known to the court or made known to it by the plaintiff, that might affect the impartiality of some of the venire, and the court is satisfied on the whole that the counsel for the plaintiff is acting in good faith, the court may permit the counsel for the plaintiff to inquire as to the financial or other interests any of the venire may have in the insurance company, naming it.* Smithers v. Henriquez, 368 Ill. 588, 15 N.E.2d 499. It all depends upon the good faith of the counsel and the fair requirements of the case. If such good faith and fair intentions are absent and the bringing of the insurance company to the attention of the veniremen is surreptitiously done, such conduct is prejudicial and constitutes error. Kavanaugh v. Parret, 379 Ill. 273, 40 N.E.2d 500; Edwards v. Hill-Thomas Lime, etc., Co., 378 Ill. 180, 37 N.E.2d 801." (Emphasis supplied.)

Let it be said, first, that the Court entertains no doubt whatsoever as to the good faith of counsel for the plaintiff. The Court and counsel for the defendants were courteously warned in advance that the question was going to be raised and when the questions were asked, they were asked in chambers out of the presence of the jury, counsel for the plaintiff in good faith believing that the submission of such questions was entirely proper, and they submitted authorities in support of such contentions from jurisdictions wherein it has been held proper to make such inquiries of prospective jurors.

In the Andrews v. Hotel Sherman case, supra, the general examination disclosed that two of the veniremen were insurance brokers and, accordingly, it was held that the "necessities of the case warranted such inquiry * * *." In the instant case, in the Court's voir dire examination of the jury panel, the jurors were individually questioned as to their occupation, business

and other interests. The examination was comprehensive and detailed. Nothing therefrom justified the conclusion that any member of the panel might be in any way interested in any automobile liability insurance company. Accordingly, the Court felt that no fair assumption could be made which justified the conclusion that any juror might have such an interest. Hence the Court refused to inquire as requested.

In support of this particular ground, the plaintiff has submitted the affidavit of one of her attorneys, who states on information and belief that the foreman of the jury, who is the president of a bank at Jamestown, N. D., is directly or indirectly interested in automobile liability insurance. In the first place, the affidavit is on information and belief. In the second place, the allegation is general as to the juror's interest in automobile liability insurance. There is no allegation as to his interest in either of the two particular insurance companies with whom two of the defendants carried liability insurance contracts or his knowledge as to the existence of such contracts. Accordingly, no prejudice has been shown. Plaintiff was entitled to have all of the jurors carefully questioned as to all of their business interests or as to any interest which might indicate a possible bias or prejudice in favor of the two insurance companies. The examination, however, having indicated that no juror might have had any such interest, bias or prejudice, the plaintiff was not entitled to have the general question submitted to the jurors. Such submission could only have had the effect of injecting into the lawsuit an element which was completely foreign to the issues which were for trial, namely, the liability of the defendants for the injuries sustained by the plaintiff.

The Court is aware of the fact that in many jurisdictions the questions submitted by the plaintiff are propounded to jurors on the voir dire examination. In other jurisdictions, no such question may be asked. The Court is aware of the fact that for many years the state district courts of North Dakota have refused to allow counsel to ask similar questions in their examination of prospective jurors, but so far as this Court is apprised, the Supreme Court of North Dakota has never passed directly upon the question. It seems to this Court that the better rule would be to inquire meticulously of prospective jurors as to

their occupations, their business and any side interests which might in some way interlock with insurance companies. If from such questions a showing is made upon which a good faith assumption might be predicated that the jurors might possibly have such an interest, then the Court should of necessity submit the question; but in the absence of any such showing, it seems to the Court that the submission of the questions would have been error. Here there was no such showing.

3. *Because the verdict is based upon a misunderstanding or lack of understanding on some point of law, the jurors having at one time during their deliberations signified a desire for further instructions from the Court.*

It appears from the affidavit of one of the attorneys for the plaintiff, and from the testimony of A. G. Kennedy, United States deputy marshal, who was one of those officials in charge of the jury at the time, that on the evening of December 19, 1945, at about 6:30 o'clock, while the jurors were engaged in deliberations, he was advised by the foreman that the jurors desired some information from the Judge on some phase of law. He informed the foreman that it would be improper for him to call the Judge on the telephone and that additional instructions could only be given in open court in the presence of the jury and all of the attorneys and that they might request additional instructions at 9:30 the next morning. The following morning the jurors returned their verdict without asking for additional instructions. It is apparent from this that they were not denied the right to receive additional instructions, but, in fact, were apprised of their right to receive such instructions the following morning; that at that time they no longer felt in the need of additional instructions and returned their verdict without making any request therefor. Accordingly, the Court is of the opinion that this particular alleged ground is without substance.

4. *Because the Court erred in denying plaintiff's motion to strike the defendants' pleas of contributory negligence on the part of the plaintiff.*

At the close of the evidence and after both sides had rested, plaintiff's counsel moved the Court to strike from the answers of the various defendants the allegations

of contributory negligence on the ground that there was no evidence in the record from which the jury could find that the plaintiff was guilty of contributory negligence. Such motion was overruled and error is predicated thereupon.

The testimony of the plaintiff and of the driver of the car in which she was riding was to the effect that they were driving at a moderate rate of speed on a straight highway with vision unobscured either by passing vehicles or other obstacles, and that they ran directly into the rear of the other car which was parked upon the highway; that they were both looking ahead through the windshield and that neither of them saw the parked vehicle. There was an utter lack of explanation as to why neither of them saw that which must have been visible to them. The situation justified the Court's granting plaintiff's request to instruct the jury upon the theory of res ipsa loquitur as to the driver of the car in which the plaintiff was riding and as to the other defendants who might be responsible because of his possibly inferred negligence. It is obvious that if plaintiff was looking ahead through the front windshield immediately prior to the accident as she so testifies, she could have seen the parked vehicle, whether it carried lights or not. If she did see the vehicle, it was her duty to direct the attention of the driver thereto. In addition and as already indicated, there was evidence in the record to the effect that both plaintiff and the driver of the car in which she was riding had been drinking prior to the accident, and that in addition to beer the members of her party had consumed approximately one-half of a bottle of whiskey referred to as "a fifth", meaning one-fifth gallon.

Ordinarily, the question of contributory negligence is one for the jury, and it seems to the Court that the facts as brought out from the evidence herein justified submitting to the jury the question of whether or not the plaintiff, under all of the circumstances presented, was guilty of any negligence which might have been a proximate cause of the accident and the injuries sustained by her. It is accordingly held that there was no error in denying plaintiff's motion to strike the defenses of contributory negligence.

5. *Because the Court erred in instructing the jury as to the theory of the defendant Farrar to the effect that his car, operated by Persellin, was not operated for and in his behalf at the time of the accident and that Persellin did not have his consent or permission to drive the car, it being alleged that there was no evidence of such theory offered in behalf of the defendant Farrar.*

In defendant Farrar's answer, he denies that the defendant Persellin was driving his car with his knowledge, permission or consent, either express or implied. In the Court's charge, it was stated that the defendant Farrar's theory was that his automobile was not operated for and in his behalf at the time of the accident, and that Persellin did not have his consent or permission to drive the car at the time. The evidence on the point was unsatisfactory. Farrar was not asked questions tending to prove or disprove the allegations of the plaintiff's complaint or the defendant's answer. The defendant Shapiro, who was alleged to have been both the employe of Farrar and his partner, and on business of his employer and on business of the partnership at the time of the accident, denied that they were on business at the time. He also testified that he had general authority over Farrar's automobile and, generally speaking, could use it as he saw fit. Under the circumstances, it seemed to the Court proper that the jury should be instructed as to the defendant Farrar's theory of defense and that there was sufficient evidence for the jury to have found either way on the particular point involved. Regardless of that fact if the Court should have been in error, the error was harmless, because Farrar's liability, if any, was bottomed entirely upon the liability of Persellin, the driver of the car, and the jurors found in favor of Persellin. Hence, the ground is insubstantial.

The other grounds upon which a motion for new trial is based are either covered by the foregoing or are without merit. Accordingly, the motion for new trial will be in all things denied.