No. 36,930

Ralph Baker, *Appellant*, v. Western Casualty & Surety Company; W. E. Anderson, R. Joe Anderson, Stella F. Anderson, and Helen G. Allen, doing business as Anderson Brothers, *Appellees*.

(190 P. 2d 850)

Opinion filed March 6, 1948.

*Walter T. Chaney,* of Topeka, argued the cause, and *Lawrence J. Richardson,* of Topeka, was with him on the briefs for the appellant.

*Allen Meyers,* of Topeka, argued the cause, and *Phillip C. Gault, Herbert A. Marshall* and *Doral H. Hawks,* all of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This is an action to recover damages for personal injuries sustained by the plaintiff in a collision of two motor trucks on a public highway.

Except as they define the issues the pleadings are of no importance and can be briefly summarized.

The petition states the defendants, W. E. Anderson, R. Joe Anderson, Stella F. Anderson and Helen G. Allen, hereinafter in the interest of brevity referred to as the defendants and later as the appellees, are partners doing business under the firm name and style of Anderson Brothers and authorized to engage in the business of a public motor carrier over U. S. Highway No. 24 at the place where the collision occurred. It further states the defendant, Western Casualty & Surety Company, is such defendants' insurer against legal liability imposed upon them, resulting from accident by reason of use of their involved motor truck. It then charges, under circumstances and conditions there completely detailed and alleged to be negligent and wanton, that on the 17th day of September, 1945, the defendants' truck, while being operated in an easterly direction on U. S. Highway No. 24 by their employee, George Lawrence, was driven into and collided with the plaintiff's motor truck, which was proceeding east on such highway on the right or south side of the center of the paved slab, at a point about a mile east of Williamstown and at a time when defendants' truck was attempting to overtake and pass the vehicle plaintiff was driving with the result plaintiff sustained serious injuries to his damage in the amount therein stated.

To the petition the defendants, including the insurer, filed a joint answer conceding their business status and relationship to be as stated by plaintiff, admitting the occurrence of the collision at about

the time and place stated but specifically denying it was due to any negligence on their part, and charging that such collision and plaintiff's injuries were occasioned by and resulted from plaintiff's own contributory negligence.

Plaintiff's reply denies generally all averments of the answer contradicting allegations set forth in the petition.

The cause was tried to a jury which in due time returned a general verdict in favor of all the defendants together with its answers to six special questions. Judgment was rendered by the trial court in accordance with the verdict. Plaintiff then filed a motion for a new trial. When this was overruled he perfected an appeal and now specifies the trial court erred (1) in refusing to submit his requested instructions to the jury; (2) in approving the general verdict and answers to special questions; and (3) in overruling his motion for a new trial.

Some of the contentions advanced in support of the errors assigned require an analysis of the evidence adduced at the trial with respect to the conditions and circumstances under which the accident occurred. We have carefully examined the record for the purpose of ascertaining what was presented to the jury on that subject by the parties.

The factual situation, up to the happening of the events directly responsible for the accident, is not in dispute and can be stated thus: Highway No. 24 where the collision occurred, is a concrete slab, eighteen feet wide, with earthen shoulders four feet wide on each side. The center of the slab is marked with a black line and the road is so straight and level that traffic can be seen for a considerable distance from either direction. At the time of the accident no vehicles, save the two involved, were in sight. The day was clear and the road dry. The truck the appellant was driving was a 1934, one-and-one-half-ton, Chevrolet flat bed truck. Appellees' vehicle was a two-and-one-half-ton, snub-nosed model, van type International truck, and was being driven by George Lawrence, one of their employees, who was accompanied by another employee, Donald Lane, as a helper.

Just how the accident happened is a matter of serious controversy and had best be related by specific reference to the testimony of the particular witnesses produced by the respective parties.

Appellant's testimony is to the effect he was driving the Chevrolet easterly along the highway at about 25 miles per hour on the right

hand side of the road and to the south of the center line of the slab when, without having heard any warning signal and being wholly unaware of any traffic approaching from the rear, he suddenly felt a jar or bump and remembers nothing further until he awakened in a doctor's office sometime later. His statement regarding the location of his truck at the moment he felt the collision is corroborated by one other witness who based his opinion upon an examination of the highway after the accident. This testimony, of course, is supplemented by other evidence relating to injuries suffered and damages sustained but it need not be related because questions pertaining to its sufficiency are not involved.

Appellees' evidence consists principally of testimony of Lawrence, the driver, and Lane, the helper. The story told by these two witnesses is substantially the same, and, so far as their direct examination is concerned, can be stated thus: They were driving along the highway in the International truck in an easterly direction at a speed of from 37 to 38 miles per hour. As they approached appellant who, in their estimation, was driving at a speed of 20 to 25 miles per hour, and when they were about 50 feet behind him, Lawrence gave two sharp blasts of the truck's horn, to which appellant gave no apparent attention. Appellant was then crowding the center line of the slab or slightly over the wrong side of such center line. After thus sounding the horn Lawrence swung over to the left side of the road to pass the Chevrolet truck. When about 20 feet to its rear Lawrence again sounded the horn. He continued to pull to the left, preparatory to passing, and when the cab of the International truck was even with or slightly ahead of the rear of the Chevrolet he sounded the horn again. At this point the International was over to the extreme left side of the road with its left rear wheels riding the shoulder of the road at the very edge of the ditch. The Chevrolet had continued to veer or drift to the left and was almost astraddle the center line of the pavement, its left wheels being about four feet over the left side of the middle of the road. In this situation Lawrence, who had not decreased the speed of his truck, did not apply his brakes because of the danger in applying brakes to a vehicle of the character he was driving while its left wheels were on the dirt shoulder. He did, however, continue to turn as far to the left as possible without going into the ditch but even so the right front corner of the International truck's van, which was eighteen inches wider than its cab, struck the left

rear corner of appellant's truck. After the collision the mark on appellees' truck showed that the point where it collided with appellant's truck was just two inches north of the south edge of the van.

On cross-examination, among other things, the witness, Lawrence, in substance stated that he neither increased nor decreased his speed as he attempted to pass appellant's truck; that when he blew his horn the first time he knew such truck was occupying more than the south side of the pavement; that when he blew his horn the second time he was not sure he could not pass that vehicle on the traveled portion of the highway; that the reason he did not then attempt to stop or reduce his speed was because he expected appellant to pull to the right side of the road at the blast of his horn and he would then have had plenty of clearance; that when he started to go around, the bed, or van of his truck lacked approximately a foot of touching the rear of the bed of appellant's truck; that at such time he thought there was space to go through without accident; that when he blew his horn the last time he was not sure he had room to do so but took a chance on it.

A few of the many questions asked the witness, Lane, on cross-examination and the answers made thereto read as follows:

"Q. Did you know that you were going to hit that truck before the jar or jolt? A. No. sir.

"Q. You didn't know it? A. No, sir.

"Q. You thought you had plenty of room. A. Thought we had just enough room to clear him around.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. (Mr. Richardson) As you were approaching that truck fifty feet from the rear, your truck entirely on the south side, left wheels of Mr. Baker's truck six-inches north of the line, intending to pass, you blew your horn and Mr. Baker continued to move to the north side of that pavement, didn't he? A. That is right, sir.

"Q. You continued in the same direction you were going, moving to the north side of the pavement to get in a position to pass to within twenty feet of that truck and Mr. Baker continues to move to the north of that line and at that time the left wheels of his truck were some eighteen to twenty inches— A. That is right, sir.

"Q. North of the line, and you again blow your horn, you continued to approach that truck intending to pass and attempting to pass, and when your cab is halfway up on the rear of the truck as you are attempting to pass. Mr. Baker is still drifting and has drifted while you have negotiated that distance so that half of his truck is over the line when the accident happened? A. That is right.

"Q. So, from the time you first saw that truck, ahead of you down the pavement, it is on the left side of the road? A. Yes, sir.

"Q. And you, in spite of that, continue in an easterly direction knowing that that man is driving on the left side of the road and smack into him?

"Q. Isn't that what happened? A. Yes, sir, but you cannot stop a loaded truck with a load on it, you cannot stop a truck as easily as you can a car. A truck with a load on it has a tendency to have that push behind it to push that thing forward. Now, we thought when we blew that horn that he would get over at the sounding of the warning signal but he didn't he just kept easing over on the left hand side of the road.

"Q. And he continued to ease over when you blew the second time? A. That is right, sir.

"Q. So, you knew then he wasn't going to didn't you? A. That is right, sir.

"Q. And when you blew it the third time you still knew he wasn't going over? A. Yes, sir, but that happened so fast that you don't have a chance when you get in a—you cannot put your brakes on fast and it happened so fast just like that."

Appellees' third witness was a state highway patrolman who arrived on the scene about thirty minutes after the accident. He stated that he was able to fix the point of the impact from the marks of wheel tracks and the debris on the road and that it was about five feet north of the center line of the highway slab. He also testified that from his observation of the wheel tracks of appellees' truck the driver of that vehicle could not have turned it any further to the north of the highway without going into the ditch and that from his experience as an investigator of accidents he did not believe, with such truck in the position it appeared to be in from his examination of the wheel marks, it would have been safe to have applied its brakes, loaded as it was.

Before turning to consideration of the claims made by appellant in support of the grounds on which he relies for reversal of the judgment it will simplify the issues to state that this is not a case where appellant failed to recover because of failure to establish negligence as charged in his petition but one where he was denied a verdict on the theory his own contributory negligence precluded his recovery. In its answers to special questions Nos. 2 and 3 the jury expressly found appellee's driver was guilty of negligence in failing to use due prudence in passing. Such findings are not challenged and are therefore conclusive.

Appellant's principal objection to the instructions is founded upon the premise the trial court failed to instruct on wanton negligence and that failure to do so was error. Assuming, for the moment only,

his evidence established wantonness the record before us does not permit a reversal of the judgment. The trial court gave general written instructions which, on examination, appear to have fairly presented the case to the jury and we fail to find, even in appellant's request for instructions, any request for an instruction on wantonness. Under our statute (G. S. 1935, 60-2909, *fifth*), if such an instruction was desired it must appear that it was requested in writing. Otherwise failure to give it is not to be regarded as reversible error. (*Douglass v. Geiler*, 32 Kan. 499, 4 Pac. 1039; *McCrie v. Lumber Co.*, 7 Kan. App. 39; *Skaer v. American Nat'l Bank*, 126 Kan. 538, 540, 268 Pac. 801; *Rapier v. Bank*, 105 Kan. 606, 185 Pac. 888; *Turman v. Process Co.*, 114 Kan. 693, 220 Pac. 510; *Cage v. Stalker*, 131 Kan. 417, 292 Pac. 773; *Lambert v. Rhea*, 134 Kan. 10, 4 P. 2d 419; *Kiser v. Skelly Oil Co.*, 136 Kan. 812, 18 P. 2d 181; *Jones v. Kansas City*, 145 Kan. 591, 597, 66 P. 2d 579; *Hogan v. Santa Fe Trail Transportation Co.*, 148 Kan. 720, 725, 85 P. 2d 28.) Many other decisions to the same effect are to be·found in West's Kansas Digest "Trial," § 255; "Appeal and Error," § 216; and in Hatcher's Kansas Digest "Trial," § 192.

At this point we might add that had appellant requested the instruction he now insists should have been given its refusal by the trial court would have been proper. Under our repeated decisions (*Railway Co. v. Baker*, 79 Kan. 183, ·98 Pac. 804; *Stout v. Gallemore*, 138 Kan. 385, 390, 26 P. 2d 385; *Blosser v. Wagner*, 144 Kan. 318, 59 P. 2d 37; *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 157 P. 2d 822) to constitute wantonness in action resulting in personal injury to another it must appear the conduct of the person so charged was such that he realized the imminence of injury to the other from his acts and refrained from taking steps to prevent such injury because indifferent to whether it occurred or not: When tested by the foregoing rule we have no difficulty in concluding the evidence in this case wholly failed to establish wanton conduct, or wantonness, on the part of appellees' driver in his attempt to pass appellant upon the highway.

Another objection to the instructions is predicated upon the refusal of the trial court to give four instructions which were requested by appellees. We have examined the instructions submitted and carefully considered the argument advanced in support of the contention made with respect thereto. It would, in our opinion, serve no useful purpose to set out the instructions in full or discuss them

in detail. We are convinced those given fully and fairly presented the cause and that embodied therein in substance were all pertinent and applicable portions of the instructions requested. That compels our approval of the trial court's action.

In his second specification of error appellant charges the trial court erred in approving the jury's answers to special questions and its general verdict.

The complaint made against the special verdict relates only to Nos. 4 and 5 of the questions and answers which read:

"4. Was the plaintiff, Ralph Baker, guilty of negligence which proximately caused or contributed to the collision? A. Yes.

"5. .If you answer the above question in the affirmative, then state what act or acts on the part of Ralph Baker constituted negligence. A. Improper driving."

We first note a contention the jury did not fairly and definitely answer question 5 and that it was made by the jury for the purpose of evading the issue. Since the record fails to disclose a request that the jury be required to make a more specific answer and it must be conceded such answer is in harmony with the general verdict this objection comes too late and cannot be considered.

In *Farmer v. Central Mut. Ins. Co.*, 145 Kan. 951, 67 P. 2d 511, we held:

"If the answer to a special question is general in its nature, and no request is made that the jury be directed to make a more specific answer, and such general answer is in harmony with the general verdict, it is too late to complain on appeal." (Syl. ¶ 6.)

To the same effect is *Moore v. Connelly*, 119 Kan. 35, 38, 237 Pac. 900, where it was said:

"A general complaint that the answers of the jury to the special questions were so evasive as to show that the jury was actuated by prejudice is not sufficient to warrant a reversal. Ordinarily, where a question of inconsistency arises between findings made in answer to the special questions, and a general verdict, every reasonable presumption should be indulged in favor of the general verdict. A general verdict and special findings should always be harmonized if possible. (Citing cases.)" (p. 38.)

See, also, *Bridgeport Machine Co. v. Hopper*, 134 Kan. 205, 208, 5 P. 2d 832, where the following statement appears:

"Appellant, we think, very justly criticizes some of the answers of the jury as being flippant and evasive, but such criticism comes too late. We cannot well remedy that situation, but the trial court could have done so if a request had been made for reasonable and definite answers to be given, before the jury was discharged."

The rule announced in the foregoing decisions is followed and approved in *Fisher v. Central Surety & Ins. Corp.*, 149 Kan. 38, 86 P. 2d 583.

It is next urged the answer to the same question is not a statement of an act of negligence. This claim must be considered in the light of the well-established rule (see *Mahan v. Kansas City Public Service Co.*, 158 Kan. 206, 146 P. 2d 383, and *Coryell v. Edens*, 158 Kan. 771, 150 P. 2d 341), that special findings are to be liberally construed with a view of ascertaining the meaning intended. The appellees' answer charged appellant with driving over to and upon the wrong side of the highway without having given any warning signal of any kind at a time when appellees' driver was attempting to pass and there was evidence supporting the charge as made. Obviously what the jury meant by "improper driving" was driving upon the wrong side of the road in the manner disclosed by the evidence. Under the circumstances of this case the answer was sufficient to constitute a finding·of negligence. This conclusion is supported by *Farmer v. Central Mut. Ins. Co.*, supra, upholding an answer that the negligence found consisted "in lack of using ordinary care" and in *Hancock v. Bevins*, 135 Kan. 195, 9 P. 2d 634, sustaining an answer where the jury found the negligence of a defendant to be "careless driving."

Another claim made is that even if it be held the evidence sustains the findings appellant was guilty of contributory negligence such negligence is no defense in view of the reckless and wanton conduct of appellees' driver. Conceding the rule to be that in negligence cases contributory negligence does not preclude a plaintiff's recovery or avail a defendant who is guilty of wantonness (*Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 157 P. 2d 822) this claim, since we have already determined the evidence failed to disclose wantonness, now falls of its own weight.

Finally appellant insists that the general verdict was contrary to the evidence and that there is nothing to be found in such evidence to sustain the finding of contributory negligence: We first direct our attention to the claim made with respect to the special finding upon which the one regarding the general verdict is necessarily founded, it being clear under our decisions that in motor vehicle collision cases of the character here involved the contributory negligence of a plaintiff precludes his recovery. See *Dolloff v. City of Wichita*, 147 Kan. 63, 75 P. 2d 221; *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan.

611, 185 P. 2d 158, and numerous decisions cited in Hatcher's Kansas Digest "Automobiles and Motor Vehicles" § 24 to § 28.

In support of his position appellant refers to several of our more recent cases (*McCoy v. Fleming*, 153 Kan. 780, 113 P. 2d 1074; *Goodloe v. Jo-Mar Dairies Co.*, supra; *Crawford v. Miller*, 163 Kan. 718, 186 P. 2d 116), citing many earlier decisions, wherein we held that violations of a statute regulating traffic, such as excessive speed, defective equipment, driving down the center of the highway on the wrong side of the road, et cetera, are not in and of themselves sufficient to make the driver of a motor vehicle guilty of either negligence or contributory negligence which will bar his recovery. Quite so. But it is to be noted the same decisions hold such violations preclude his recovery if it appears they were the proximate and legal cause of his injuries or contributed thereto. They are also authority, although the specific question was not there under particular consideration, for the proposition that when such questions cannot be determined as a matter of law because of a disputed factual situation and are of such a character reasonable minds might differ thereon their determination is for decision by the triers of fact—in this case the jury—whose decision is conclusive if supported by substantial competent evidence.

Nothing would be gained by repeating the evidence heretofore set forth at considerable length. When analyzed we believe it compels the conclusion this was preëminently a fact case and that the trial court's approval of the finding appellant was guilty of contributory negligence must be upheld. Having so decided it follows appellant's contention the general verdict is not supported by the evidence cannot be sustained.

Appellant's claims with respect to error in the overruling of his motion for a new trial have all been disposed of by what has been heretofore stated and therefore require no further consideration.

The judgment is affirmed.

HOCH, J., not participating.