Ruth LOHR, Appellant,

v.

Lawrence TITTLE, Appellee.

No. 6226.

United States Court of Appeals
Tenth Circuit.

Jan. 26, 1960.

Rehearing Denied March 10, 1960.

Leonard O. Thomas (of Stanley, Schroeder, Weeks, Thomas & Lysaught), Kansas City, Kan. (Tom Boone (of Boone, Boone & Boone), Leavenworth, Kan., on the brief), for appellant.

James H. Ottman, Kansas City, Mo. (L. R. Magee, Overland Park, Kan., on the brief), for appellee.

Before BRATTON, PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff, Ruth Lohr, brought this action to recover damages for personal injuries allegedly sustained when the automobile in which she was riding as a passenger collided with defendant's automobile at a street intersection in Leavenworth, Kansas. This is an appeal from a judgment for defendant entered upon the jury's verdict.

Relying principally on the claim that the undisputed evidence shows that the automobile in which plaintiff was riding entered the intersection first and had the right of way, the plaintiff first contends that the court erred in denying her motion for a directed verdict

on the issue of liability. On motion for directed verdict, the evidence and the inferences fairly to be drawn from it, must be considered in the light most favorable to the party against whom the motion is made. And if, when viewed in this manner, the evidence and the inferences fairly drawn therefrom are such that reasonable minded persons in the exercise of fair and impartial judgment may reach different conclusions on a crucial issue of fact, the motion should be denied and the question submitted to the jury. Atlas Building Products Co. v. Diamond Block & Gravel Co., 10 Cir., 269 F.2d 950 (appeal pending); Transcontinental Bus System, Inc. v. Taylor, 10 Cir., 265 F.2d 913; Commercial Standard Insurance Co. v. Feaster, 10 Cir., 259 F.2d 210; Kippen v. Jewkes, 10 Cir., 258 F.2d 869; Wunderlich Contracting Co. v. United States, 10 Cir., 240 F.2d 201. When the evidence is considered in that manner, it is clear that the motion was properly overruled for two reasons: (1) the evidence was such that a reasonable person could conclude that the defendant was not guilty of negligence which was the proximate cause of the collision, and (2) a jury question was presented as to the contributory negligence of the plaintiff. The accident occurred at about midnight on August 26, 1957. The plaintiff was riding in an automobile driven by Max Woehr in a westerly direction on Metropolitan Avenue in Leavenworth, Kansas. As his car approached 4th Street, which carries north-south traffic, Woehr prepared to make a left turn. At this intersection both streets are four-lane and divided by medial strips, or islands. Each lane is about 24 feet wide and the overall width of Metropolitan Avenue is 88 feet. It is an unusual intersection in that 4th Street does not extend north beyond Metropolitan Avenue. Its north-bound traffic may turn right or it may cross the east-bound lane of Metropolitan and continue on to the lane for the west-bound traffic. Westbound traffic on Metropolitan may enter 4th Street by turning left and proceeding south past the medial strips and across the lane for east-bound traffic on that street. Except for a stop sign where 4th Street enters Metropolitan, there are no traffic control signals. The defendant Tittle was driving in an easterly direction in the south lane of traffic on Metropolitan and was approaching the entrance to 4th Street. When some distance from the intersection, Tittle observed the Woehr car approaching the intersection from the east. There were several vehicles traveling east on Metropolitan in addition to Tittle, and as an automobile which was from 100 to 125 feet in front of him cleared the intersection, he observed the Woehr car begin a left turn and proceed toward the east-bound lane of traffic. He testified that the car was traveling at a speed of from 15 to 20 miles per hour and as it "swung around off the north side of Metropolitan" its speed was accelerated and it "seemed to shoot right across in front of me, like he was tromping on the gas, or stepping on the gas."[1] Tittle sounded the horn and applied the brakes of his car but was unable to prevent the collision. As Tittle's car struck the right side of Woehr's car, it was moving very slowly and was pushed five or six feet to the right by the force of the collision. Woehr's car continued on across the intersection before coming to a stop. Woehr's explanation of why he continued on into the path of Tittle's oncoming car could be interpreted as meaning that he thought he was protected by a stop sign. We think this evidence quite clearly presented a jury question as to whether Tittle's conduct fell below the statutory standard of care required of a driver

[1]. On cross-examination, Tittle was not positive about the acceleration of the speed but he maintained that Woehr's car did not slow down and came directly on across the east-bound lane after making the turn. Testimony unfavorable to the party against whom a motion for directed verdict is made is not to be considered in passing on the motion; it is for the jury to determine the weight to be given such testimony. Olson v. Maxwell, 10 Cir., 263 F.2d 182; Whittington v. Mayberry, 10 Cir., 190 F.2d 703.

under these circumstances.[2] See Mahan v. Kansas City Public Service Co., 158 Kan. 206, 146 P.2d 383.

Plaintiff testified that when Woehr started to make the left turn, defendant's car was some distance from the intersection. She said she called Woehr's attention to the oncoming car but did not remonstrate in particular or request him to stop or slow down. She stated that Woehr reduced his speed and attempted to stop prior to the collision, but there was no physical evidence, such as skid-marks, of the attempt to stop. She had been riding with Woehr for about two and a half hours. Tittle testified that after the collision he talked to Woehr while he was still seated in the car and that there was an odor of alcohol therein; that Woehr's voice was "thick" and he did not answer when asked what he was trying to do; that when Woehr got out of the car his walk was unsteady, that he staggered and had the appearance of being intoxicated. Without objection, the court instructed the jury that the plaintiff had an obligation to exercise ordinary care for her own welfare and had a duty not to ride with Woehr if, in the exercise of reasonable care, she should have considered it unsafe to ride with him in view of his physical condition. This instruction correctly stated the general rule. Cf. Perry v. Schmitt, 184 Kan. 758, 339 P.2d 36, 40. And see Quisenberry v. Herman, 100 U.S.App.D.C. 144, 243 F.2d 250; Traverso v. Pupo, 51 Wash.2d 149, 316 P.2d 462; Kopycinski v. Farrar, D.C.N.D., 63 F.Supp. 857, appeal dismissed 8 Cir., 155 F.2d 725; Cf. American Smelting & Refining Co. v. Sutyak, 10 Cir., 175 F.2d 123, 127; Blashfield, Cyclopedia of Automobile Law and Practice, §§ 2453, 6627; Annotation, 15 A.L.R.2d 1165. The jury was also instructed, without objection, that the plaintiff had a duty to warn her driver of impending danger when an opportunity to warn existed and when an ordinarily prudent passenger would have done so. This is the law of Kansas, applicable in this case, and apparently so considered by the parties when the instructions were given. D'Hondt v. Hopson, 10 Cir., 269 F.2d 759. It was for the jury to decide if, for either of these two reasons, the plaintiff was guilty of contributory negligence.

The plaintiff submitted an instruction setting out the statutory definition of an intersection. G.S.K.1957 Supp. § 8–501. In addition to the statutory definition, the proposed instruction defined the area of the intersection involved herein as "the area bounded on the North by the North edge of the pavement for the West bound lanes of Metropolitan, on the East by the East line of 4th Street, on the South by the South edge of the pavement for East bound traffic and on the West by the West line of 4th Street. Thus the Woehr automobile was in the intersection from the time it passed the East edge, or line, of 4th Street, and the defendant's car was in the intersection after it reached the West edge, or line, of 4th Street." The court indicated on the proposed instruction that the subject matter thereof would be covered. Plaintiff now complains that no instruction was given which defined an intersection. After the court had completed its instructions to the jury, the failure to give the instruction was not called to the attention of the court and no objection was made to such failure. The record discloses that after the instructions were given, plaintiff's counsel objected only with respect to the court's failure to include instructions dealing,

---

**2.** G.S.Kan. § 8–551, provides that a driver intending to turn left from an intersection shall yield the right of way to any vehicle approaching from the opposite direction, when such vehicle is so near that an attempt to turn would create a hazardous situation. But this Section also lays down a standard of conduct applicable in this case to Tittle, by further providing that " * * * said driver, having so yielded and having given a signal when and as required by this act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the vehicle making the left turn."

first, with the right of way of a vehicle first entering an intersection, and second, with the question of proximate causation as it concerned the alleged failure to signal for a left turn. Rule 51, Fed. Rules Civ.Proc., 28 U.S.C.A., provides that "no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." As to the proposed instruction, the objection did not meet the requirements of the Rule. Justheim Petroleum Co. v. Hammond, 10 Cir., 227 F.2d 629; Ziegler v. Akin, 10 Cir., 261 F.2d 88; Jones v. Koma, Inc., 10 Cir., 218 F.2d 530.

■ Plaintiff complains that the court erred in not instructing the jury that the failure to give a statutory signal would not be considered the proximate cause of the collision if the defendant, by the exercise of reasonable care, could or should have seen and known that Woehr's car was making a left turn. A Kansas statute requires that the driver of a motor vehicle intending to turn right or left shall give a continuous signal for not less than 100 feet before making the turn. G.S.K. § 8–547. In making a left turn from within an intersection, the driver of the vehicle shall yield the right of way to one approaching from the opposite direction "which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the vehicle making the left turn." G.S.K. § 8–551. The law is well settled in Kansas that a violation of a statute regulating traffic does not constitute actionable negligence unless the violation is the proximate cause of the accident. Hutchens v. McClure, 176 Kan. 43, 269 P.2d 473; Rohrer v. Olson, 172 Kan. 674, 242 P.2d 825; Stevens v. Jones, 168 Kan. 583, 215 P.2d 653; Goodloe v. Jo-Mar Dairies Co.,

163 Kan. 611, 185 P.2d 158; Wright v. National Mut. Casualty Co., 155 Kan. 728, 129 P.2d 271; Eldredge v. Sargent, 150 Kan. 824, 96 P.2d 870.

We think the court's instructions on the subject were too clear for misunderstanding and, when considered as a whole, are adequate. The jury was told to find for the plaintiff if the defendant failed to keep a proper lookout or exercise reasonable care in keeping his vehicle under control or if he failed to yield the right of way after the driver of the car in which plaintiff was riding had, before turning, signaled a left turn and yielded the right of way to vehicles approaching from the opposite direction which were in the intersection or so close thereto as to constitute a hazard. Contrarily, the jury was instructed that if the driver of the car in which plaintiff was riding failed to keep a proper lookout or failed to give a left turn signal and yield the right of way to cars coming from the opposite direction which were in the intersection or so close thereto as to constitute an immediate hazard, and these failures were "the sole and proximate cause of the collision," the verdict should be for the defendant. It is inconceivable that from these instructions a jury would understand that the defendant could, with impunity, drive into another vehicle which was in plain view merely because its driver had not given the statutory signal.

■ A Leavenworth police officer was called as a witness by the defendant and questioned as to his knowledge of the accident. The witness stated that he did not investigate the accident and knew none of the facts involved in this case. The record discloses that following this development there was a conference between counsel and the court, the purpose of which is not revealed in the record. Following this conference, the defendant proceeded with a lengthy cross-examination of the witness concerning his pretrial statement which had been made in the presence of a court reporter. There was no objection to this procedure and so far as the record discloses it was with

the consent of the plaintiff. The questioning developed that the witness, in a pre-trial statement, had said that he did investigate the accident along with another police officer and that both he and the other officer talked to Woehr who at that time was under the influence of liquor to such an extent that he "was not capable of operating a car in a sufficient manner and I told him that." Near the close of this cross-examination, plaintiff's attorney stated to the court that the reading of the statement was highly prejudicial and was designed to convey to the jury the impression that such pre-trial statement could be considered as probative evidence in the case. If counsel's statement were considered as an objection, there was no ruling thereon. Later plaintiff's attorney stated that the witness had testified that he knew nothing about the accident and that there was nothing to impeach because he had not testified as to any fact involving the issues in the case. The court reporter was later called as a witness for the sole purpose of identifying the statement, which was not offered in evidence. It is quite apparent from the extensive arguments and discussions between counsel and the court relative to the admissibility of references to this pre-trial statement that the court and plaintiff's attorney were in agreement that the statement could be used only for impeachment purposes, and at the request of plaintiff's attorney the court advised the jury that the statement previously made by the police officer was of no probative value, that it did not tend to prove or disprove any facts which would disclose which of the parties was entitled to prevail, and that it was to be considered only insofar as it might affect the credibility of the officer's testimony that he had not investigated the accident. The court accepted the position of the plaintiff and she may not now complain. See Bernhard v. Gaffney, 100 U.S.App.D.C. 97, 243 F.2d 41.

Finally, the plaintiff contends that the trial court abused its discretion in not granting a new trial because of the misconduct of one of the jurymen. The depositions of three jurors were taken to establish that during the deliberations of the jury the foreman made a statement to some of the members that on the preceding evening he had been at the scene of the accident where he had observed that the traffic moved slowly there. The foreman, in his affidavit, admitted that he had made a statement which would leave such an impression but he conceded that, in fact, he had not gone to the place where the accident occurred. The evidence is without conflict that whatever was said was confined to discussions with jurors and there were no extraneous matters injected into the case. The rule is well established in this Circuit that the evidence of jurors is not admissible to impeach their verdict. E. L. Farmer & Co. v. Hooks, 10 Cir., 239 F.2d 547, certiorari denied 353 U.S. 911, 77 S.Ct. 699, 1 L.Ed.2d 665; Western Spring Service Co. v. Andrew, 10 Cir., 229 F.2d 413; Loney v. United States, 10 Cir., 151 F.2d 1; Johnson v. Hunter, 10 Cir., 144 F.2d 565; Consolidated Gas & Equipment Co. of America v. Carver, 10 Cir., 257 F.2d 111. The reason for the rule is stated in McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 784, 59 L.Ed. 1300, as follows:

"But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation —to the destruction of all frankness

and freedom of discussion and conference."

Southern Pac. Co. v. Klinge, 10 Cir., 65 F.2d 85, certiorari denied 290 U.S. 657, 54 S.Ct. 72, 78 L.Ed. 569, is distinguishable because there one of the jurors obtained information from an extraneous contact and relayed that information to the remaining jurors. That case was also held inapplicable in Young v. United States, 10 Cir., 163 F.2d 187, certiorari denied 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 355 and 334 U.S. 859, 68 S.Ct. 1533, 92 L.Ed. 1779.

Affirmed.