No. 28,388.

ERNEST E. CLOSSON, Trustee of The Trapp-Gohr-Donovan Company, a Bankrupt, *Appellee,* v. THE KAW PACKING COMPANY, *Appellant.*

(283 Pac. 493.)

Opinion filed January 11, 1930.

*Irwin Snattinger, Hugh T. Fisher, E. B. Smith* and *Harry C. Blaker,* all of Topeka, for the appellant.

*John W. Newell, Wm. Wallace* and *Paul H. Edgar,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action to recover the balance of $2,383 claimed to be due on the contract price for the installation of a refrigeration system. There is no controversy about the original

contract price, or the amount that had been paid thereon. Defendant claimed additional credit for freight paid and for certain materials furnished at the time the system was installed. These were allowed, and no complaint is made of that. Defendant also counterclaimed for damages alleged to have been sustained and to have resulted from the defective or improper installation of the refrigeration system. The jury answered special questions and returned a general verdict for plaintiff. The defendant has appealed.

On December 2, 1921, the Trapp-Gohr-Donovan Company, a corporation of Omaha, Neb. (later adjudged a bankrupt, and whose trustee in bankruptcy brought this action), entered into a written contract by which it sold to the Kaw Packing Company, of Topeka, then a partnership, but later incorporated, and the defendant in this action—

"One ten-ton Armstrong compressor complete with high-pressure side all valves and fittings to properly connect to cooling coils located in building. Meat coolers to be equipped with approximately 3,000 feet of 1½-inch welded coil, each cooler to have a hold-over tank suitable to submerge one set of coils in brine, cellars to be piped with coils sufficient to maintain a temperature of 36 degrees to 40 degrees, all piping to be of special ammonia piping. All the above machinery and equipment to be installed complete in buyers' building by the seller."

The contract contained this provision:

"The seller warrants that the articles contracted for are capable, with proper care, of producing refrigerating as specified—any material proving defective under capable and proper operation within one year from shipment will be replaced free of charge, subject to the return of the damaged portion—the seller will not be responsible for subsequent defects or damages arising through improper handling, or where work is done, material furnished, or repairs or alterations made by others."

The contract price was $4,870, to be paid 10 per cent cash with order, 25 per cent on completion of installation, and 25 per cent each 30 days thereafter. The work of installing the refrigeration system was begun in December, 1921, and completed in May, 1922. Defendant paid $487 December 19, 1921, and $2,000 February 9, 1922. By the terms of the contract defendant was to pay freight on the material to Topeka and was to be credited the amount so paid upon the contract price. Defendant had paid the freight, but the amount so paid had in fact not been credited by plaintiff at the time this action was brought.

The building for the defendant company was being constructed, or, perhaps more accurately, an old building was being extensively reconstructed and rebuilt, at the time of the installation of the

refrigeration system. After the work was started the plan or design of the building to be constructed by defendant in which the refrigeration system was to be installed was materially changed, the boiler room and killing room were relocated, and the cooling rooms were also relocated and their capacity enlarged to substantially double their capacity as originally planned. In doing this work it appears that the floors of the cooling room had been laid, and on making some changes of plans of the building it was necessary to take out these floors and raise them three feet. The expense of that, as shown by the evidence, was $497. Defendant pleaded this item of expense as damages. In answering the special questions the jury allowed defendant on this item $497, and stated that the amount allowed included interest in the sum of $160.69. The appellant complains of this and contends that since the only evidence with respect to the cost of changing these floors was that it cost $497, which sum was actually paid by defendant to the workmen constructing the building in May, 1922, that the $160.69 should have been added to the sum actually paid. We can see very well how the jury might have disallowed this item entirely, for under the contract plaintiff was not to construct the building in which to install the refrigeration system, and ordinarily would not be liable for defective plans under which defendant was having its building constructed and by reason of which changes were found to be necessary. But under the evidence plaintiff knew at the time this contract was made that the building would have to be constructed as the work of installation of the refrigeration system progressed; also, that it was the purpose of defendant to so construct the building as to enable plaintiff to install the system so that it would be efficient and produce proper refrigeration. There also is evidence in the record that the floors were originally put in the cooler at the place designated by plaintiff's foreman, who was there installing the refrigeration system, and that he later discovered that the floors would have to be changed in order properly to install the refrigeration system. It is true that the evidence on this point was controverted, but if the evidence offered by defendant on this point were believed by the jury it would follow that this expense was caused by plaintiff—in fact, that was the only basis on which any sum could be allowed for this item. Since the jury found that plaintiff was liable to defendant for this item of damages there is no reason why the interest should not be added as a proper element of damage. The judgment of the court below must be modified accordingly.

After the refrigeration system was installed, and about September, 1922, a fire destroyed part of the building of the defendant, but did not seriously damage the refrigeration system, but in reconstructing the plant it was again substantially enlarged to care for defendant's growing business. In the spring of 1925, the volume of defendant's business having greatly increased, and it having, from time to time, increased its plant until its coolers were three or more times as large as when originally constructed, defendant thought best to change its refrigeration system from a direct ammonia cooling system to an indirect brine cooling system, and did so. The expense of making that change was $1,354.91. Defendant pleaded this item of expense as a damage resulting from the failure of plaintiff properly to install the refrigeration system. The jury allowed nothing for this item. Appellant complains of this, and contends that under the evidence this item should have been allowed. We have examined all of the evidence abstracted on this point and find ample substantial evidence to support the jury's finding—later approved by the trial court—that this expense was incurred because of defendant's desire to enlarge its plant so it could better handle its growing business and because of the advisability of changing its refrigeration system to one more suitable to the larger plant.

Defendant pleaded damages in the sum of $775.54 for loss of meat resulting from imperfect refrigeration. The jury allowed $100 for this item. This was approved by the trial court. Appellant complains of this. There was evidence that defendant had purchased meat, at a cost more than the damages claimed, to resell to its customers, and that this was made necessary because of meat spoiled by imperfect refrigeration. There was also evidence that no meat was lost, or spoiled so that it had to be thrown away, because of imperfect refrigeration. There was evidence that at times there was imperfect refrigeration of the meat in the coolers; that this caused the meat to look slimy, and the government inspectors complained that there were streaks on the meat; and that some meat was sent to the sausage room for that reason, but the amount of it so sent, or the loss to defendant by reason thereof, was not shown. There was also evidence that such imperfect refrigeration of the meat in the coolers as there was at times resulted from overcrowding the cooler and not from an imperfect refrigeration system; that the coolers were of a capacity for eight or ten head of beef, while twenty-five or more were put in them. As a whole, no serious complaint of the jury's finding on this item is justified.

Appellant complains that the court excluded competent evidence offered in its behalf. This evidence was not offered on the hearing of the motion for a new trial, by affidavit or otherwise, as required by statute (R. S. 60-3004), hence appellant cannot predicate error on the ruling. Aside from that the rulings appear to have been proper.

The judgment of the court below is modified by giving to defendant an additional allowance of $160.69 as of the date of the verdict of the jury, and as so modified is affirmed.

JOCHEMS, J., not participating.