No. 30,089.

THE BRIDGEPORT MACHINE COMPANY, *Appellant*, v. W. F. HOPPER. *Appellee.*

(5 P. 2d 832.)

Opinion filed December 12, 1931.

*D. W. Eaton,* of Wichita, for the appellant.

*A. C. Malloy, Roy C. Davis* and *Warren H. White,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This action is one upon an account for merchandise sold defendant. The answer puts in issue the correctness of the account and by way of counterclaim alleges damages incurred

by reason of the plaintiff furnishing him an oversized trip spear which stuck in the pipe of the oil well defendant was drilling, causing extra work besides expense of purchasing and renting additional equipment. To the counterclaim a general denial was filed by plaintiff, and upon a trial before a jury a verdict was rendered for defendant for damages in excess of the claim allowed plaintiff, on which verdict a judgment was rendered for defendant against plaintiff for $503.57, from which judgment the plaintiff appeals.

The pleadings contain other allegations than here indicated, but no evidence was offered on them and they were not submitted to the jury. Before any evidence was introduced an agreement was reached as to the amount due the plaintiff on its account, viz., $2,114.28, and the court thereupon placed the burden upon the defendant.

This is almost entirely a fact case. The defendant alleged in his counterclaim that he ordered of plaintiff a trip spear to be used in 20-pound seamless pipe which was being used in this well, and the plaintiff furnished him instead a trip spear for 17-pound pipe which was oversize, and the difference in size was not discovered until the spear stuck in the pipe when he was trying to raise the pipe for underreaming, the well being then 4,290 feet deep. The defendant had ordered all the pipe being used in the well from or through the plaintiff, so that plaintiff knew all about it and what size of a trip spear would be proper with such pipe. It developed in the evidence that 20-pound pipe and 17-pound pipe have exactly the same diameter on the outside of the pipe, $5^3/_{16}$ inches, and that 20-pound pipe has necessarily a smaller interior diameter than the 17-pound pipe because of the 3 pounds extra or additional weight of material in each one foot in length. So a trip spear to properly work inside of a 20-pound pipe should be smaller than that for a 17-pound pipe. The plaintiff claims it furnished the proper-sized trip spear, just as ordered, but the defendant blocked it with larger sticks than should have been used, and whatever sticking in the pipe may have occurred was not due to the size, which was correct, but the improper blocking; also, that the pipe in the well was crimped or kinked in the use of it, which was not known to plaintiff, and the tool stuck because of these defects in the pipe.

Defendant testified that the first trip spear he got was too large and could not be used; didn't even try it, just measured it and sent for another. The next one received was used as soon as it arrived

and stuck and could not be released nor jarred loose, but stuck in the second joint from the top instead of going down to the bottom of the well. There was no question about a trip spear getting stuck in the pipe, but the difficult question is which one of two or more spears was it that got stuck. The plaintiff distinguishes them by numbers 6880 and 7274 and from its bookkeeping department memorandum entries, receipts and notations which tend to sustain its contention that it sent the one of the correct size. Defendant says he used the second one furnished, and after the pipe was taken out of the well and the spear was removed from the pipe he took it to plaintiff's plant and had it reduced one-eighth of an inch in diameter. Plaintiff says the one defendant had reduced was a new one off the shelves the day it was reduced, and after the trouble at the well had taken place. These two trip spears were in the court room before the jury as well as a third one of a different kind which was used in a different way and for a slightly different purpose. Both of these trip spears had been disposed of after the trouble to other parties, but were procured and brought in for the trial, one of them by each party. Several witnesses testified for each side. Very few could give any dates for any of the transactions which they related. Witness made measurements of the spears in the court room before the jury by the aid of a two-foot carpenter's rule, also a caliper, and testified as to the results. The measurements involved fractions in sixteenths of an inch.

Plaintiff, appellant here, insists that the evidence was undisputed in many particulars, especially as to dates as shown by its memorandum slips, but the evidence of the defendant was plainly in conflict with such dates and other particulars, although not by anything in writing. Some notations on the memorandum slips were apparently confirmatory of defendant's theory.

The foreman on the drilling work had long experience and claimed to know how to operate a trip spear, and defendant's witnesses stated positively the pipe was not crimped nor kinked when the spear stuck in it, but some of it became so later.

Plaintiff claims it was No. 6880 it furnished just before it stuck and it was the correct size and not oversize, and No. 7274 was not taken off its shelves until after the trouble at the well occurred, and it was trimmed down and reduced in size before it left the plant. Defendant claims it was No. 7274 that was furnished just before it

stuck in the pipe and it was taken back and trimmed down after being stuck in the pipe.

The parts and portions of the evidence that could properly be classed as uncontradicted were not particularly decisive of the real issue. The issue as given to the jury by the court, to which instruction no objection was made by either party, is as follows:

"The jury are instructed that there are but two questions to be determined by the jury in this case, to wit: Did or did not the plaintiff furnish the trip spear of the size ordered by the defendant, and in the event you find, by a preponderance or greater weight of the evidence, that the plaintiff furnished a trip spear of a size other than that ordered by the defendant, then you will determine, from a preponderance or greater weight of the evidence, the amount of the damages sustained by the defendant as the proximate result of the furnishing of such improper size tool by the plaintiff, provided, of course, you find that the size of the tool furnished was not the size ordered. . . ."

The court then gave the converse of the question at issue and instructed the jury how to adjust its verdict both ways with the admitted amount due the plaintiff from the defendant.

The jury, in addition to the general verdict, answered special questions as follows:

"1. What is the proper diameter at the largest point of a 5$\frac{5}{16}$-inch trip spear for use in 20-pound seamless casing? A. The size to work properly in 20-pound seamless casing.

"2. What is the inside diameter of 20-pound seamless casing? A. We do not know.

"3. What is the diameter at the largest part of the 5$\frac{5}{16}$-inch trip spear number 6880 exhibited to the court and jury? A. Approximately 4$\frac{9}{16}$ inches at the time of trial, according to measurements before jury by tools supplied.

"4. What was the diameter at the largest part of the trip spear number 7274 exhibited to the court and jury before the spear was turned down? A. We do not know.

"5. Which of the spears exhibited to the court and jury was gotten at plaintiff's Wichita plant by witnesses Fuller and Graber? A. The one that got stuck in the casing.

"6. Was the spear which Fuller and Graber brought to the well the spear which was stuck in the casing? A. Yes.

"7. On what date was the trip spear stuck in the casing? A. The day it was delivered at the well.

"8. On what date was trip spear No. 7274 turned down? A. We do not know.

"9. Was trip spear No. 7274 a new spear that had never been used when it was turned down? A. We do not know, as there was no evidence that proved to the jury that it was new or used."

Appellant, we think, very justly criticizes some of the answers of

the jury as being flippant and evasive, but such criticism comes too late. We cannot well remedy that situation, but the trial court could have done so if a request had been made for reasonable and definite answers to be given, before the jury was discharged.

"A complaint that the answers of the jury to special questions were evasive is not sufficient to warrant a reversal where no application was made to require the jury to more definitely answer the questions." (*Moore v. Connelly,* 119 Kan. 35, syl., 237 Pac. 900.)

"An unresponsive answer to a special interrogatory, not inconsistent with other special findings and not in conflict with the general verdict, is held not to be a good ground for setting aside the general verdict." (*Grubb v. Sargent,* 117 Kan. 233, syl. ¶ 1, 230 Pac. 1043.)

There was one difficulty in answering one of the questions as to which of the spears was gotten by Fuller and Graber, because defendant's witnesses did not use numbers in referring to them, but pointed to them on the floor of the court room. We also think there was some evidence as to measurements which would have enabled the jury to answer some of the questions approximately, if not exactly, rather than to have said, "We do not know." But the answers, however indefinite and evasive they may be, are not inconsistent with the general verdict, and the elements that may be lacking in them and are necessary to make up the defendant's right to recover, are found in the general verdict for the defendant. (*Seeds v. Bridge Co.,* 68 Kan. 522, 75 Pac. 480.)

The question of implied warranty is discussed in the briefs, but we think it is not involved in the case as it was presented to the jury.

Appellant insists that its demurrer to the defendant's evidence should have been sustained by the trial court at the close of defendant's evidence, claiming the evidence did not show that the spear furnished was anything else than exactly what defendant had ordered, and further, that the showing by measurements, elicited on cross-examination, was that the spear was much smaller in diameter than the pipe. The fact that the spear may have been smaller than the pipe is not the test, else the very fact that it went into the pipe and reached the second joint of it would be conclusive. We think there was sufficient evidence at that time in the proceedings to give the case to the jury, and there was no error in overruling the demurrer to the evidence.

Appellant complains of the ruling of the court depriving it of interest on its account. The amount claimed in plaintiff's petition

is not set out in the record, but is said to have been $500 or $600 larger than that fixed by the stipulation. Defendant in his answer to the plaintiff's claim states that—

"Defendant alleges that the list of debits, as set forth in the exhibits to plaintiff's petition, include overcharges and unwarranted charges against this defendant in the aggregate sum of $1,488.02, which amount should be credited to this defendant on said account."

The agreement reached just before trial fixing the amount due plaintiff states the following concerning interest thereon:

"The interest on the said principal sum of the account to date is $571.79. The question of whether said interest item is chargeable is a question of law for the court."

We are not advised whether any of the reduction made was on account of overcharges and unwarranted charges, as alleged in the answer, and for that reason we are not able to bring the facts in this case within the rule cited by appellant in *Clogston v. White*, 127 Kan. 399, 273 Pac. 458, that it is a settled law in this jurisdiction that interest is allowable where there is no uncertainty as to the amount due or as to the time when it was due. Until this stipulation was filed, the pleadings definitely presented a question of fact for the jury involving overcharges and unwarranted charges in which situation it cannot be said that the plaintiff was entitled to interest on the part that withstands such attack.

In the case of *Trust Co. v. Robinson*, 89 Kan. 842, 132 Pac. 979, where the plaintiff was seeking to recover money withheld by its former president, who claimed to be entitled to several items for expenses incurred and money paid out on behalf of the company and for compensation for his services, it was held the plaintiff should not recover interest when some of the claims were upheld and others disallowed, especially when there was no vexatious or unreasonable delay on his part.

In the case of *Closson v. Kaw Packing Co.*, 129 Kan. 418, 283 Pac. 493, cited by appellant, interest was allowed under circumstances very much like those in this case, except that the jury allowed the defendant damages for expenses in a certain amount and stated that the amount included interest, and the court held:

"Since the jury found that plaintiff was liable to defendant for this item of damages there is no reason why the interest should not be added as a proper element of damage." (p. 420.)

In a recent case involving several sales of job lots of merchandise

about which there was a controversy as to five of them, the court held:

"In the absence of an agreement therefor, interest should not be computed on a mutual account, nor on an unliquidated claim." (*Govenius Bros. v. Reagor,* 130 Kan. 711, syl. ¶ 2, 288 Pac. 537.)

We are not convinced that there was error in refusing plaintiff interest under the facts and circumstances that appeared before the trial court, neither do we find error in the overruling of the motions to set aside certain answers to special questions, to render judgment on the special verdicts notwithstanding the general verdict, and for a new trial.

The judgment is affirmed.