No. 33,334

Mrs. H. L. Wilbourne, *Appellee*, v. The Prudential Insurance Company of America, *Appellant*.

(66 P. 2d 417)

Opinion filed April 10, 1937.

*Benjamin F. Hegler, A. V. Roberts, Roger P. Almond,* all of Wichita, and *S. C. Bloss,* of Winfield, for the appellant.

*W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action on an insurance policy. Plaintiff recovered judgment. Defendant appeals.

The sole question is whether all premiums due had been paid on the policy at the time of the death of insured. Plaintiff was the mother of insured. Plaintiff took out a policy on her own life first, and a short time thereafter took out one on her daughter's. The premium on each policy was 25 cents a week.

The practice of the company was to keep a record of the payment on the policies in a book. This book was permitted to remain in the possession of insured. When payments of premiums were made an agent for the company wrote in the book the amount of the payment and the date it was made, and signed his initials. When there was more than one policy issued to members of the same family only one book would be used for the family and the premiums for all policies would all be entered in that book. That was the usual practice, and it was followed in this case.

When the policies were issued the daughter was living at home with her mother. Along about March 12, 1934, she married and removed with her husband to El Dorado. The mother took the

stand and testified that at the time she took out the policies she told the agent that she wanted to pay the premiums for both policies; that he said she could pay any amount she wished; that she told him she wanted what she paid applied on both policies; that she would keep them both up, and the agent told her he would divide the payments between the policies. A method sometimes used by policyholders was to send in the book by mail to the agent, together with money for a payment, whereupon the agent would mark the payment in the book and return it to insured. That was the custom followed in this case. Some pages from this book were introduced in evidence at the trial and photostatic copies of them are in the abstract. They are the most helpful of all the evidence offered.

On the first page of this book are the names of Alice Wilbourne and Floy Cooke, together with the number of the policy of each, the date of issue and the weekly premium of each, 25 cents in each case. The name of Floy Cooke is written in twice, and in each instance a line drawn through it and underneath is written "Transferred to El Dorado."

Under date of August 7 two payments of 25 cents each were credited and marked "on application." On August 21, 1934, two payments of 50 cents are credited. On through to March 4, 1934, the book shows at regular intervals payments of 50 cents, sometimes with a circle with a "2" marked in it, and sometimes with a "4" and sometimes with a "5." This symbol always appears over the signature of the initials of the agent. It shows the amount sent in each time was enough to pay two, four or five weeks, as the case might be. There is no dispute about that. The difficulty commences with the payment for March 4, which was the last one before the insured was married on March 12.

The plaintiff testified that she continued to send in the money to apply on both policies and that she meant for them to be applied on both policies.

From March 19, 1934, to May 7, the book shows that eight payments of 25 cents were entered in the book, four on March 6 and four on April 12. These entries further show the figure "50" has been written over the figure "25." On the left-hand side of the page, where the regular dates are printed, there is written in for the first of these payments the figures "4-20," which undoubtedly means the payment was made on April 20. Then underneath there

is written in the place for the weekly payments the figure "25." On the right-hand side of the page there is written "both pd. to May 7th." The book then shows from May 14 to June 4 four payments of 50 cents each, all paid on May 17, but credited in the proper place for each week. The same appears for payments from June 11 to July 2, with the payment being made June 19. From July 11 the book shows that four payments of 25 cents each were made and 25 cents is credited in the proper place for weekly payments for each week until July 2. On July 11 the book shows the same things for each week in July. On August 2 the book shows the same for each week in August. On September 3 the book shows eight payments of 25 cents and they are credited in the proper places for each week until October 22. On October 29 the book shows four payments of 25 cents each, all credited in the proper place for each week until November 19, 1934.

The proper crediting of the 25-cent payments made from July 7 on is the turning point in the action. The insured died on September 6, 1934. It seems to be conceded that if all the payments were divided evenly and credited equally on each policy, the policy of insured was in force at the time of her death.

The plaintiff testified that she made the payments about as they have been set out here, and that she continued to make the payments after the marriage of her daughter just as she had before; that at the time of the death of her daughter the receipt book was in the mail, with a lump sum in it of $2; that she was relying on the agent for the company to continue the application of these payments on both policies.

Her attention was called to the place in the book to which reference has been made where the name of her daughter appears and has a line drawn through it with the words "Transferred to El Dorado" written underneath it. She testified that these words were not written by her and that she never saw or knew of any of that writing being crossed out until after her daughter's death.

On cross-examination she testified that soon after her daughter's marriage she informed the agent for the insurance company that her daughter's name was "Kelly," but that she did not tell him that she did not desire to make any further payments on her daughter's policy, and that she did not tell him that she wanted the daughter's policy transferred to El Dorado.

Another daughter of the plaintiff testified as to the conversa-

tion her mother had with the agent about dividing the payments between the two policies.

The agent for the insurance company testified that the reason for the figure "50" being written over the figure "25" on the payments for March and April was that about that time insured was married and he collected from another daughter of plaintiff for part of the payments on her policy and from insured for part of them. He further testified that on May 17 the 50-cent payments started again and the last payment of 50 cents was credited on July 2; that after the 25-cent payments started, that is, that on July 9, plaintiff paid him $1 and it was credited to her at 25 cents a week; that at that time she requested the transfer of her daughter's policy to El Dorado; that she did this by letter, but he did not keep a copy of the letter; that after he received the letter he credited the payment to her and then transferred the policy to El Dorado, using the company's regular form; that after the daughter's policy was transferred, the payments he testified he received were · credited to the mother's policy, as shown on the books; that he wrote the words "transferred to El Dorado"; that plaintiff should have had that book in her possession with those words written in there before her daughter's death; that the first time he crossed out the name of the daughter was when her sister was paying, and he wrote the name in again when the mother began paying, and scratched it out again when the policy was transferred to El Dorado.

Mr. Powers, the agent for defendant, testified that when he received the notice from the agent of the company at Winfield that the policy had been transferred to El Dorado he called on insured at the address given and collected 50 cents on July 9; that this 50 cents paid the policy for the week of July 6 and July 9; that he saw insured and her husband after that two or three times, but never collected any money; that he reported the policy for cancellation the week of August 18. It should be stated here that this 50-cent payment was admitted by all parties to have been made. He further testified to a conversation had with plaintiff in the undertaking parlors at El Dorado wherein plaintiff asked him to take the money and reinstate the policy after the death of insured, and that he said this could not be done. There was further testimony about the lapsing of the policy, which is not of interest here.

In rebuttal a daughter of plaintiff testified that no such conversation took place between the agent and her mother as was testi-

fied to. The mother testified in rebuttal that she did not send any letter to the agent of the company at Winfield directing him to apply all her payments on her own policy, and not on her daughter's, and that she did not give any directions to have her daughter's policy changed to El Dorado.

On the above evidence the jury returned a verdict for the plaintiff and answered some special questions. The special questions in which we are interested were as follows:

"1. Was a payment of 50 cents made on the premiums on said policy by Floy Lorene Cook Kelly on July 16, 1934, to Agent Elmo Powers? A. Yes.

"2. If you answer the foregoing question in the affirmative, state whether any other payments were made on said policy thereafter. A. Yes.

"3. If you answer the foregoing question in the affirmative, then state—

"(a) By whom such payments were made. A. Mrs. H. L. Wilbourne.

"(b) When such payments were made. A. July 11, '34, and Aug. 2d, '34.

"(c) Dates and amounts of such payments. A. July 11, '34, $1; August 2d, '34, $1.

"(d) To what agent of the company were such payments made? A. E. L. VanLaningham."

The defendant filed a motion for a new trial and for judgment on the special questions. Coupled with the latter motion was one to set aside the answers to certain of the special questions. These motions were all denied and judgment was rendered accordingly. The appeal is from that judgment.

Defendant points out the answers to questions 1, 2 and 3. It is argued that by the answer to question 3 (c) the jury found that all the money paid on July 11 and August 2 by plaintiff was paid on the policy of insured, while the view of the evidence most favorable to plaintiff only warranted a finding that half was so paid. The argument is that this answer was not sustained by the evidence, that it should have been set aside, and that when this answer is set aside the general verdict of the jury cannot stand. The trouble is that had that question not been asked at all the verdict would be sustained by the evidence. As it now stands there is no inconsistency between the answers and the general verdict. All parties agree that if the jury believed that the July and August payments were to be divided equally between the mother's policy and the daughter's policy the plaintiff should have prevailed, and if the jury believed that the payments were all to be applied on the mother's policy the defendant should have prevailed. Defendant argues that the answer shows that the jury was confused and decided to find for the plain-

tiff whatever the evidence might be. We think the answers all construed together, as they must be, do not show any such confusion on the part of the jury as to necessitate the setting aside of the general verdict. All that happened in the answer to question 3 (c) was that the jury did not take time to do the mathematical work of dividing the payments made on July 11 and August 2 by two so as to state just how much was applied on each policy. This is not such a variance between the finding and the proof as to require the general verdict to be set aside. It is not every unresponsive answer to a special question that will require the general verdict to be set aside. (See *Grubb v. Sargent,* 117 Kan. 233, 230 Pac. 1043; also, *Bridgeport Machine Co. v. Hopper,* 134 Kan. 205, 5 P. 2d 832.)

The judgment of the trial court is affirmed.