
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

          Respondent,

v.

JOEL C. HOLMES,

          Appellant.

)
)
)
)
)
)
)
)
)
)
)

No. 70398-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: <u>September 29, 2014</u>

SPEARMAN, C.J. — Holmes appeals his convictions for intimidating a judge (RCW 9A.72.160) and harassment (RCW 9A.46.020) arising from a threat to kill King County Superior Court Judge Julie Spector communicated to a 911 telephone dispatcher on November 18, 2012. He argues that insufficient evidence supports his convictions. In a statement of additional grounds, Holmes also argues, among other things, that the trial court improperly imposed a term of community custody. We agree with this contention, but otherwise reject Holmes' arguments. We affirm the judgment and remand for resentencing.

## FACTS

In early 2006, Judge Spector presided over a trial in which Holmes was charged with telephone harassment after he threatened to kill the former president of the University of Washington and one of the vice provosts. Evidence at the 2006 trial established that in 1986, following his dismissal from the University of Washington, Holmes placed a series of threatening telephone calls

to the vice provost. Twelve years later, in 1998, Holmes placed another series of telephone calls to the vice provost as well as to the former university president in which he referred to his dismissal and stated he would kill the vice provost, the former university president and then-president Bill Clinton. Eight years later, in 2004, Holmes again placed a series of telephone calls to the vice provost, the retired president, and two other university administrators in which he threatened to kill them in retaliation for his dismissal from the university. At no time did Holmes follow through on his threats, although the vice provost testified that he once saw Holmes standing on the street across from his house. The jury convicted Holmes and Judge Spector sentenced him to twelve months' incarceration.

Following the 2006 trial, Holmes continued to contact Judge Spector and her staff periodically. During the course of his appeal of the 2006 decision, he occasionally went to Judge Spector's courtroom seeking assistance with filing appellate pleadings and papers. Additionally, in 2011, Holmes placed a series of telephone calls to Judge Spector's courtroom. He left rambling, nonsensical voicemail messages that were recovered by Judge Spector's staff. The lengthy messages filled up the court's voice mailbox, but the calls were not considered threatening.

On November 18, 2012, Holmes placed a telephone call to 911:

DISPATCHER: 911. What are you reporting?

MR. HOLMES: I'm going to kill King County Prosecutor
Dan Satterberg and Shoreline District Court Judge
Doug...I'm going to assassinate Dan Satterberg and
Shoreline District Court Judge Douglas J....and...Shoreline

District prosecutor. I'm going to assassinate Dan Satterberg and Doug...Doug and Judge Julie Spector and Judge Douglas J. Smith ... (dial tone).

Exhibit (Ex.) 1. In addition, a few days later on December 1, 2012, Holmes sent three more emails to Judge Spector in which he, among other things, complained about his federal public defenders, threatened to commit suicide, told Supreme Court Commissioner Steven Goff, "Why don't you drop dead, you piece of crap," and stated that but for the law against "true threats" he would "e-mail the statement to the Washington State Supreme Court, that I would like to kill [Commissioner Goff], President Obama, Chief Justice Madsen, Governor-elect Inslee and the rest of the attorneys/judiciary." Ex. 3.

On December 10, 2012, Holmes was charged with intimidating a judge and harassment. A jury trial on the charges commenced on May 6, 2013. At trial, Judge Spector testified that she had listened to a copy of the 911 call and heard Holmes' threat to kill her. She also testified that she was aware that Holmes had not acted on his purported threats in the past. Nonetheless, she was "shocked," "terrified," and "alarmed" because she remembered that Holmes had been seen across from the vice provost's house in 1996, even though the vice provost's personal address was not public information. Verbatim Report of Proceedings (VRP) (May 9, 2013) at 80, 86, 135. Judge Spector testified that she was concerned that Holmes' conduct toward her in the end of 2012 demonstrated a "continuing and pervasive obsession" with her "involvement in his case

because he doesn't want to be a convicted felon and somehow I'm a — responsible for that." VRP (May 9, 2013) at 85. She also explained the numerous rulings she had made during Holmes' 2006 trial leading up to his conviction and that she had sentenced him to twelve months in jail, although she had discretion to impose a shorter sentence. Judge Spector testified that she believed Holmes had serious mental health issues, which, in her opinion, made him a threat to her safety.

The jury convicted Holmes of intimidating a judge and harassment as charged. He was sentenced to 36 months' incarceration on the intimidation charge and 16 months' incarceration on the harassment charge, to run concurrently. The trial court also imposed twelve months' community custody. Holmes appeals.

### DISCUSSION

Holmes challenges the sufficiency of the evidence supporting his conviction for one count of intimidating a judge and one count of harassment. A challenge to the sufficiency of the evidence admits the truth of the evidence presented at trial, which we view in the light most favorable to the prosecution. State v. Mines, 163 Wn.2d 387, 391, 179 P.3d 835 (2008). We will reverse a conviction on this ground only if we find that no reasonable trier of fact could have found the person guilty beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980). In analyzing a claim of insufficiency, we draw no distinction between circumstantial and direct evidence because both are considered equally reliable. State v. Bencivenga, 137 Wn.2d 703, 711, 974

P.2d 832 (1999). The credibility of the witnesses and the weight to be given to the evidence are matters for the finder of fact. Bender v. City of Seattle, 99 Wn.2d 582, 594-95, 664 P.2d 492 (1983). We defer to the trier of fact to resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the evidence. State v. Gerber, 28 Wn. App. 214, 216, 622 P.2d 888 (1981); State v. Ong, 88 Wn. App. 572, 576, 945 P.2d 749 (1997).

Holmes was convicted of intimidating a judge and of felony harassment. A person is guilty of intimidating a judge if a person directs a threat to a judge because of a ruling or decision of the judge in any official proceedings. See RCW 9A.72.160. The statute criminalizes threats to a judge "only if used to attempt to influence a judge's ruling or in retaliation for a past ruling." State v. Knowles, 91 Wn. App. 367, 374, 957 P.2d 797 (1998). A person is guilty of felony harassment if the person, without lawful authority, knowingly threatens to kill the person threatened immediately or in the future. See RCW 9A.46.020(2)(b). Holmes claims that the evidence was insufficient as to both crimes because it fails to establish that his threat to kill Judge Spector was a "true threat" as required by the state and federal constitutions. He also argues that even if the evidence established a true threat, it was nevertheless insufficient to prove that he intimidated a judge because the evidence failed to show the threat was based on a ruling or decision made by Judge Spector while presiding over his 2006 trial. We address each of these contentions in turn.

<u>Whether the Threat is a "True Threat"</u>

The United States Constitution and the Washington Constitution guarantee freedom of speech. U.S. CONST., AMEND. I; WASH. CONST., ART. 1, § 5; R.A.V v. St. Paul, 505 U.S. 377, 382, 112 S. Ct. 2538, 120 L.Ed.2d 305 (1992); City of Seattle v. Huff, 111 Wn.2d 923, 925, 767 P.2d 572 (1989). When a criminal statute implicates speech, the State must prove both the statutory elements of the offense and that the speech was not protected by the First Amendment. State v. Kilburn, 151 Wn.2d 36, 54, 84 P.3d 1215 (2004).

Because a threat is pure speech, the statutes at issue here, which criminalize threats, are limited in their reach to "true threats." State v. Allen, 176 Wn.2d 611, 626, 294 P.3d 679 (2013) (interpreting RCW 9A.46.020); Brown, 137 Wn. App. at 591-92 (interpreting RCW 9A.72.160); Watts v. United States, 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969).

> A "true threat" is 'a statement made in a "context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted ... as a serious expression of intention to inflict bodily harm upon or to take the life'" of another person. A true threat is a serious threat, not one said in jest, idle talk, or political argument. Under this standard, whether a true threat has been made is determined under an objective standard that focuses on the speaker.

Kilburn, 151 Wn.2d at 43-44 (internal citations and quotations omitted); accord Allen, 176 Wn.2d at 626; State v. Schaler, 169 Wn.2d 274, 287, 236 P.3d 858 (2010). In accord with this standard, the jury in the present case was instructed that:

> As used in these instructions, threat means to communicate, directly or indirectly, the intent immediately to use force against

6

> any person who is present at the time or to cause bodily injury in the future to the person threatened or to any other person.
>
> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat.

CP at 261.

Holmes argues that the circumstances in this case made it unforeseeable to a reasonable person that his threat to kill Judge Spector would be interpreted as a serious expression of his intent to carry out the threat. He contends that because the evidence showed that Judge Spector was aware of his history of threatening to kill public figures and that he had never acted on these threats, a reasonable person would not foresee that Judge Spector would take the threat seriously. But there was also evidence that Judge Spector was aware of Holmes' prior convictions for harassment of authority figures and that he had been seen outside the home of one of his victims. Judge Spector was also aware of Holmes' repeated expressions of violent thoughts about his lawyers and other judicial officers. The judge also knew that after the 2006 trial, Holmes made a series of confusing calls to her chambers, visited her courtroom on several occasions and, following the threat on her life, forwarded three other ominous emails to her. The jury was entitled to weigh this evidence, resolve any conflicts and draw any reasonable inferences. Gerber, 28 Wn. App. at 216. Viewing the evidence, as we must, in the light most favorable to the State, we conclude it was sufficient for a reasonable juror to conclude beyond a reasonable doubt that a reasonable

7

person would foresee that Holmes' threat to Judge Spector would be interpreted as a serious expression of his intention to carry out the act.[1]

<u>Sufficiency of the Evidence on the Charge of Intimidating a Judge</u>

Holmes argues the evidence presented at his trial was insufficient to allow a jury to conclude beyond a reasonable doubt that the threat was made because of a ruling or decision made by Judge Spector. Holmes points out that he did not refer to the 2006 conviction or any ruling or decision by Judge Spector in the 911 call in which the threat was made. Holmes cites a number of cases in which he claims convictions for intimidating a judge were affirmed because the defendant made specific threats regarding a ruling or decision by a judge. He argues that in the absence of such a specific threat, the evidence is insufficient to support the conviction. We disagree.

<u>State v. Hansen</u>, 122 Wn.2d 712, 862 P.2d 117 (1993), one of the cases upon which Holmes relies in support of this argument, is instructive. In <u>Hansen</u>, the defendant was convicted of a felony and served 24 months in prison. Following his release, he began contacting attorneys in order to bring a civil action against the State, his former defense attorney, the prosecutor in his felony trial, and the judge from the earlier trial. <u>Id.</u> at 714. He telephoned an attorney

---

[1] Holmes also argues that a reasonable person would not foresee that his threat to Judge Spector would be taken seriously because it was "very fleeting" in relation to the threats against the other public figures mentioned in the 911 call he made on November 18. Br. of Appellant at 13. This argument is not well taken. First, we do not agree that the threats against Judge Spector were comparatively "fleeting." Based on our review of the record, the entirety of the 911 call was brief and the portion devoted to Judge Spector seems relatively equivalent in length to the portions directed at other persons. Second, we do not agree that a reasonable person has any less reason to foresee that a threat will be taken seriously simply because it is uttered with brevity.

whose name he had obtained from the Seattle–King County Bar Association Lawyer Referral Service and asked the attorney if he would take his case. Hansen explained to the attorney that he felt he had been conspired against, calling the trial a "kangaroo court." During this conversation, Hansen identified by name the prosecutor and public defender, but did not name the judge. The attorney explained to Hansen that he would not take the case and that Hansen might want to seek another attorney with more experience in criminal law. At this point in the conversation, Hansen became upset. He explained to the attorney that he was the third lawyer he had talked to about the possible action and that the bar was not helping out with his cause. Hansen then stated:

> When you say I am not going to get any help from the Bar, I
> am not going to get any help from anybody ... What am I
> going to do ... I am going to get a gun and blow them all
> away, the prosecutor, the judge and the public defender.

Id. at 714-15. The Hansen court concluded that this threat, which did not reference a specific ruling or decision, was sufficient to sustain Hansen's conviction. The Court held that the requirement that the threat be because of a ruling or decision by the judge was satisfied "by the fact that Hansen made the threat because of Judge Dixon's earlier official action when Hansen was convicted of a felony." Id. at 719. Holmes' argument that explicit reference to a particular judicial decision is necessary to sustain a conviction for intimidating a judge against a claim of insufficiency is without merit.

Moreover, there is abundant circumstantial evidence that Holmes threatened Judge Spector because of her official action in his 2006 trial. The evidence established that Judge Spector and Holmes did not know each other

9

before the 2006 trial. Thus, it was their only connection to each other. The evidence also showed that during the trial Judge Spector made many decisions related to admissibility of evidence, jury instructions, sentencing, and other matters, which impacted the outcome of that trial.[2] There was also evidence that Holmes was obsessed for years with overturning the telephone harassment convictions that resulted from the trial. He appealed the convictions to the highest courts in both state and federal jurisdictions, including filing four personal restraint petitions and one habeas corpus petition. (See, Ex. 8-16). And over the years following the convictions, he repeatedly contacted Judge Spector's court in person and via telephone and email.

When this evidence is viewed in the light most favorable to the State, we conclude that a reasonable juror could find beyond a reasonable doubt that Holmes' threat to Judge Spector was because of a ruling or decision she made in her official capacity as presiding judge at the 2006 trial. Accordingly, we reject Holmes' challenge to the sufficiency of the evidence regarding his conviction for intimidating a judge.

---

[2] Holmes testified that the intent of his threat to Judge Spector was "simply to show my – my growing frustration and – and indignation with the court process in this state." VRP (May 9, 2013) at 184. Holmes also denied that Judge Spector's decision to sentence him to the 12 months of confinement, the high end of the 9-12 month standard range, was a basis for his threat. The jury, however, was free to accept or reject this testimony.

Statement of Additional Grounds

In a pro se statement of additional grounds,[3] Holmes raises several issues

of constitutional and statutory interpretation. We review these issues de novo.

State v. Gresham, 173 Wn.2d 405, 419, 269 P.3d 207 (2012).

Holmes argues that his convictions violate the First Amendment. In

addition to his contention that his statements to the 911 dispatcher were not "true

threats," discussed above, he maintains that both the intimidating a judge statute

(RCW 9A.72.160) and the harassment statute (RCW 9A.46.020) are

unconstitutionally overbroad as applied to him. This argument lacks merit.

In State v. Williams, 144 Wn.2d 197, 206, 26 P.3d 890 (2001), our

supreme court acknowledged the rule to be applied to overbreadth challenges:

> "A law is overbroad if it sweeps within its prohibitions
> constitutionally protected free speech activities. The First
> Amendment overbreadth doctrine may invalidate a law on its face
> only if the law is 'substantially overbroad.' In determining
> overbreadth, 'a court's first task is to determine whether the
> enactment reaches a substantial amount of constitutionally
> protected conduct.'" [City of Bellevue v. Lorang, 140 Wn.2d 19,
> 226-27, 992 P.2d 496 (2000) (quoting City of Seattle v. Huff, 111
> Wn.2d 923, 925, 767 P.2d 572 (1989) (quoting City of Houston v.
> Hill, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)))].

Under this rule, neither the intimidating a judge nor the harassment statute is

overbroad as applied to Holmes. Although the statutes may reach some pure

speech, i.e., threats which are not "true threats," Holmes' threat to Judge Spector

---

[3] Holmes filed a statement of additional grounds (SAG) on January 31, 2014, pursuant to RAP 10.10. On August 20, 2014, while this appeal was pending, he filed an additional pro se brief entitled "Request to Clarify Record in No. 70398-6-I." In the August 20 brief, Holmes appears to assume that we had declined to rule on his SAG or, that we had entered a ruling without notice to him. He is mistaken. Because the issues raised in Holmes' August 20 brief were previously raised in the SAG and are discussed in this opinion, we do not address it further.

was a "true threat" that was unprotected by the First Amendment. The State's

regulation of such speech did not violate Holmes' rights.

Holmes also argues that the harassment statute is void for vagueness. We

disagree.

> "Under the due process clause of the Fourteenth Amendment, a
> statute is void for vagueness if either: (1) the statute 'does not
> define the criminal offense with sufficient definiteness that ordinary
> people can understand what conduct is proscribed'; or (2) the
> statute 'does not provide ascertainable standards of guilt to protect
> against arbitrary enforcement.' " [Lorang, 140 Wn.2d at 30 (quoting
> State v. Halstien, 122 Wn.2d 109, 117, 857 P.2d 270 (1993)
> (quoting City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795
> P.2d 693 (1990)))].
>
> The purpose of the vagueness doctrine is twofold: "first, to provide
> citizens with fair warning of what conduct they must avoid; and
> second, to protect them from arbitrary, ad hoc, or discriminatory law
> enforcement." Halstien, 122 Wn.2d at 116–17, 857 P.2d 270;
> Lorang, 140 Wn.2d at 30, 992 P.2d 496 (citing Grayned v. City of
> Rockford, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222
> (1972)); State v. Lee, 135 Wn.2d 369, 393, 957 P.2d 741 (1998);
> City of Tacoma v. Luvene, 118 Wn.2d 826, 844, 827 P.2d 1374
> (1992). "A statute is unconstitutionally vague if either requirement is
> not satisfied." Halstien, 122 Wn.2d at 117–18, 857 P.2d 270 (citing
> Douglass, 115 Wn.2d at 178, 795 P.2d 693).

Williams, 144 Wn. 2d at 203-04. Holmes maintains that the harassment statute is

void because it fails to identify who must be threatened in order for a person to

be liable. However, the statute expressly penalizes threats to cause specific

harms to "the person threatened" or "any other person." RCW 9A.46.020(1)(a)(i);

(2)(b)(ii). We find this identification of the legislature's intended victim sufficient to

put citizens on notice of the proscribed conduct.[4]

---

[4] Holmes also asserts that the intimidating a judge statute is void for vagueness. But because he does not support the assertion with any facts or other explanation for why this is so, we do not address it further.

Next, Holmes contends that his convictions, which arise out of the same threat made during the same phone call, violate federal and state rules against double jeopardy. The common law principle of double jeopardy precludes any person from being twice put in jeopardy for the same offense. This principle is embodied in the Fifth Amendment to the United States Constitution which states, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb", and is applicable to the States through the Fourteenth Amendment. Similarly, Washington State Constitution, art. 1, § 9 provides that no person shall be twice put in jeopardy for the same offense. See State v. Netling, 46 Wn. App. 461, 731 P.2d 11 (1987).

One of the purposes of the double jeopardy clause is to prevent multiple punishments for the same offense. State v. Meneses, 169 Wn.2d 586, 592-93, 238 P.3d 495, 498 (2010) (citing State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005)). Washington courts employ the "same evidence" test to determine whether two offenses are sufficiently distinguishable in law and fact to permit the imposition of cumulative punishment. The "same evidence" test is nearly identical to the rule set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). State v. Calle, 125 Wn.2d 769, 777, 888 P.2d 155, (1995). Under these tests, offenses are not the same if there is an element in each which is not included in the other, and proof of one offense would not necessarily also prove the other. Id.; see also, Meneses, 169 Wn.2d at 593-94. Holmes asserts that his convictions for intimidating a judge and harassment are the same in law and fact because the exact same act and intent underlies both

13

convictions, a single phone call made to a 911 dispatcher in which he threatened to kill Judge Spector. He is mistaken.

The crimes charged in this case are legally different because each required proof of a fact the other did not. As charged, intimidating a judge required Holmes' threat to Judge Spector to be *because of a ruling or decision by the judge in an official proceeding*; harassment had no such element. The harassment charge required Holmes' threat to place the victim in *reasonable fear that the threat would be carried out*; intimidating a judge had no such element.

Although the offenses charged in this case are identical in fact because both occurred when Holmes communicated a threat to kill Judge Spector to a 911 dispatcher, they are not identical in law and, therefore, are different under the "same evidence" and Blockburger tests. Holmes' double jeopardy claim fails.

Holmes also argues that the trial court violated his right to confront opposing witnesses when it denied his motions to subpoena individuals related to two taped telephone conversations introduced at trial. This argument lacks merit. The Sixth Amendment confrontation clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. State v. Davis, 154 Wn.2d 291, 298, 111 P.3d 844 (2005); Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004). In Crawford, the Court explained that the confrontation clause:

> applies to "witnesses" against the accused—in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in

14

turn, is typically "[a] solemn declaration or affirmation made
for the purpose of establishing or proving some fact." Ibid.

541 U.S. at 51. Under Crawford and its progeny, testimonial statements of a

witness who does not appear at trial are inadmissible unless the witness is

unavailable to testify and the defendant had a prior opportunity for cross-

examination. Id. at 68-69; Davis, 154 Wn.2d at 299.

In this case, Holmes moved the trial court to subpoena the 911 dispatcher

heard on the November 18, 2012 911 call.[5] He also requested that the court

subpoena the Supreme Court docket clerk and the custodians of the tapes of a

November 13, 2004 call,[6] in which Holmes threatened Supreme Court Chief

Justice Barbara Madsen, among others. But because Holmes fails to show that

any of the individuals he sought to subpoena made testimonial out-of-court

statements that were offered against him at trial, the trial court's refusal to

subpoena the individuals was not error.

Next, Holmes argues that a lack of specificity in the charging document

and jury instructions regarding the particular ruling or decision giving rise to his

threats denied him a decision by a unanimous jury on count one, intimidating a

judge. This argument also lacks merit. Criminal defendants have the right to a

unanimous verdict of guilt determined by a jury of his or her peers. See, e.g.,

State v. Smith, 159 Wn.2d 778, 783, 154 P.3d 873 (2007). The right includes

"'the right to unanimity as to the means by which the defendant committed the

---

[5] Ex. 1.

[6] Ex. 17.

15

crime.'" State v. Spencer, 128 Wn. App. 132, 141, 114 P.3d 1222 (2005) (quoting State v. Klimes, 117 Wn. App. 758, 770, 73 P.3d 416 (2003), overruled in part by State v. Allen, 127 Wn. App. 125, 110 P.3d 849 (2005)). This constitutional requirement also demands unanimous jury findings on all of the statutory elements of the charged offense. In re Det. of Keeney, 141 Wn. App. 318, 327, 169 P.3d 852 (2007).

Holmes claims that because the jury instructions failed to specify a particular ruling or decision that gave rise to his threat against Judge Spector, the jury was permitted to make a non-unanimous determination on guilt. We disagree. One element of the crime of intimidating a judge is that an actor threaten a judge "because of a ruling or decision of the judge in *any* official proceedings." RCW 9A.72.160 (emphasis added). But there is no statutory requirement, as Holmes suggests, that the threat be based on a particular ruling or decision. As such, it is not an element of the offense that must be determined unanimously.

Holmes also argues that his conviction for intimidating a judge based on threats to kill was unlawful because the intimidating a judge statute, RCW 9A.72.160, cross-references a statutory definition[7] of "threat" – RCW 9A.04.110(25) – that has been re-indexed.[8] He seems to be making the argument that his act of threatening to kill Judge Spector is no longer punishable

---

[7] RCW 9A.72.160 defines "threat" in relevant part "as defined in *RCW 9A.04.110(25)."

[8] Since the legislature's 2012 revision of 9A.04.110, subsection (25) provides a definition for "statute."

under the statute because it does not fall within any definition of "threat" on the face of the statute. He is mistaken.

The 2012 version of RCW 9A.72.160, which governs this case, defines "threat" in relevant part "as defined in *RCW 9A.04.110(25)." The text of the statute includes an asterisk, which refers to the following note, codified with the statute:

> *Reviser's note: RCW 9A.04.110 was amended by 2005 c 458 § 3, changing subsection (25) to subsection (26); was subsequently amended by 2007 c 79 § 3, changing subsection (26) to subsection (27); and was subsequently amended by 2011 c 166 § 2, changing subsection (27) to subsection (28).

RCW 9A.72.160. Thus, while Holmes is correct in noting that at the time he was charged the applicable definition for "threat" had moved from subsection (25) to (28), the legislature responded to this recodification by indicating the correct definition in its notes on the intimidating a judge statute. Thus, although the face of the statute prohibits threats "as defined in RCW 9A.04.110(25)," a "threat" as defined by RCW 9A.04.110(28) is plainly prohibited under the intimidating a judge statute.

Next, Holmes argues that prosecution of his case was time-barred by RCW 9A.04.080(1)(h), which prohibits prosecution of most felony offenses, including those charged here,[9] more than three years after their commission. In this case, Holmes was charged on December 10, 2012 for crimes alleged to have occurred on November 18, 2012, when Holmes communicated threats to

---

[9] Intimidating a judge is a class B felony. RCW 9A.72.160(3). Harassment is also a class C felony when based on a threat to kill the person threatened or any other person. RCW 9A.46.020(2)(b)(ii).

17

kill Judge Spector to a 911 dispatcher. The prosecution commenced less than a month after the alleged crimes were committed. Thus, Holmes' argument that his prosecution violated the three year statute of limitations lacks merit.

Holmes also argues that insufficient evidence establishes that he possessed the requisite mens rea for intimidating a judge because there is no proof that he intended the judge to receive the threat. He is incorrect. In order for a threat to support a conviction for intimidation of a judge, the threat need not reach the judge; nor need the defendant actually intend to cause the judge bodily harm. All that is required is that the defendant direct a threat to a judge in which he communicates the intent to do so. State v. Side, 105 Wn. App. 787, 21 P.3d 321 (2001). In other words, a defendant need not intend for the threatened judge to ever receive the threat, so long as he communicates the threat to someone. In this case, Holmes clearly and unequivocally directed a threat to Judge Spector, in which he communicated the intent to kill the judge. Thus, Holmes had the requisite mens rea for the crime.

In addition to the constitutional and statutory challenges discussed above, Holmes raises several challenges to the sentence imposed in this case. Holmes argues that the trial court improperly calculated his offender score. A sentencing court's offender score calculation is reviewed de novo. State v. Wilson, 113 Wn. App. 122, 136, 52 P.3d 545 (2002).

The trial court calculated Holmes' offender score as four, based on four counts of telephone harassment, for which Holmes was sentenced on March 10, 2006. Holmes contends he had an offender score of zero because these

offenses washed out pursuant to RCW 9.94A.525. Subsection (2)(c) of that statute provides:

> Except as provided in (e) of this subsection, class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

But the trial court correctly concluded that these offenses did not wash out because Holmes was convicted of telephone harassment on June 18, 2009, just three years after his convictions in 2006. The trial court did not err in calculating Holmes's offender score.

Holmes also argues that the court erred when it imposed a one year term of community custody. We agree. The imposition of conditions of community custody is within the discretion of the sentencing court and will be reversed only if manifestly unreasonable. State v. Bahl, 164 Wn. 2d 739, 753, 193 P.3d 678 (2008).

In this case, the trial court imposed a one-year term of community custody based on a finding that Holmes committed a "crime against persons" under RCW 9.94A.411. The statute provides a list of crimes against persons, which does not include the crimes of intimidating a judge or harassment charged in this case. The State notes that the list does include the crime of intimidating a public servant and argues that, for purposes of the statute, intimidating a judge is subsumed within this crime. We disagree.

"Public servant" is defined in our criminal code as:

any person other than a witness who presently occupies the position of or has been elected, appointed, or designated to become any officer or employee of government, including a legislator, **judge**, judicial officer, juror, and any person participating as an advisor, consultant, or otherwise in performing a governmental function.

RCW 9A.04.110(23) (emphasis added). The State contends that, because judges are public servants and intimidating a public servant is one of the enumerated crimes against persons, it is logical to conclude that the more specific crime of intimidating a judge is also a crime against persons. But this argument is undercut by the fact that the definition of "public servant" also includes jurors, yet the crime of intimidating a juror is specifically listed as a crime against persons, where intimidating a judge is not.

Moreover, our supreme court has held that RCW 9.94A.411 provides an exhaustive list of crimes against persons. In re Postsentence Review of Leach, 161 Wn. 2d 180, 185-86, 163 P.3d 782 (2007). Even if omission of the crime of intimidating a judge was a legislative oversight, we are not at liberty to correct the error and amend the statute, "unless it is 'imperatively required to make it a rational statute.'" Id. at 186 (quoting State v. Taylor, 97 Wn.2d 724, 729, 649 P.2d 633 (1982)). The State makes no argument, and we perceive none, that would imperatively require us to do so in this case.

Because community custody is not authorized by statute, it must be stricken from Howe's otherwise valid sentence. Id. at 188(citing In re Pers. Restraint of West, 154 Wn.2d 204, 215, 110 P.3d 1122 (2005) ("'[T]he imposition of an unauthorized sentence does not require vacation of the entire judgment or

granting of a new trial. The error is grounds for reversing only the erroneous portion of the sentence imposed'" (quoting State v. Eilts, 94 Wash.2d 489, 496, 617 P.2d 993 (1980))).[10]

*Remand to amend the judgment and sentence to strike the term of community custody, otherwise affirmed.*

WE CONCUR:

Spearman, C.J.

Leach, J.

Schindler, J.

---

[10] Holmes also asserts that his sentence reflects bias and impartiality on the part of the trial judge and that the punishment imposed is cruel and unusual. But he supports neither argument with an explanation of the facts giving rise to these claims. Accordingly, we do not consider them.